IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00727-RJC-DCK


LA MICHOACANA NATURAL, LLC,

                 Plaintiff,

vs.

LUIS MAESTRE, an individual, d/b/a
LA MICHOACANA and/or LA LINDA
MICHOACANA; ADRIANA TERAN,              ORDER
an individual, d/b/a LA MICHOACANA
and/or LA LINDA MICHOACANA; and
LA MICHOACANA, a business entity,
form unknown.

                 Defendants.
_____

THIS MATTER is before the Court on Plaintiff's Motion for Preliminary

Injunction. (Doc. No. 22). Upon consideration of the parties' briefs and the evidence

presented in the record, the Court GRANTS the Plaintiff's motion and preliminarily

enjoins the conduct of Defendants LUIS MAESTRE; ADRIANA TERAN (aka

ADRIANA MAESTRE); and LA LINDA MICHOACANA ("Defendants") as set forth

in the following order.

## SUMMARY OF THE FACTS

### A. Procedural History

Plaintiff LA MICHOACANA NATURAL, LLC is a North Carolina limited

liability company, which since 2014 has owned and operated two ice cream parlors in

1

Charlotte, North Carolina under the name LA MICHOACANA, who owns nine (9) North Carolina Trademark registrations for the marks "**LA MICHOACANA**", "**La MICHOACANA es... Natural**" (and design)  and  (Indian girl doll design) in connection with ice cream products, retail store services, and ice cream parlor services respectively. Plaintiff is also the exclusive North Carolina licensee of the Federally applied for marks, owned by its Mexican Licensor, namely "**LA MICHOACANA**", "**La MICHOACANA Natural**" , as well as the Federally registered trademarks, namely LA FLOR DE MICHOACAN and LA FLOR DE MICHOACAN (and design)  (U.S. TM Cert. of Registrations Nos. 2830401 and 3249113.) Plaintiff is also the exclusive North Carolina user and licensee of a derivative mark, namely  which was created by Plaintiff's founder's sister in 2014.

On December 19, 2017, Plaintiff filed its Complaint, (Doc. No. 1), against the Defendants alleging the unlawful use of Plaintiff's North Carolina Registered trademarks as well as Plaintiff's licensed trademarks and derivatives. Plaintiff asserted eight causes of action: (1) Trademark infringement under the Lanham Act; (2) Unfair competition and False Designation of Origin under the Lanham Act; (3) Federal Trademark Dilution under the Lanham Act; (4) Cybersquatting under the

Lanham Act; (5) Infringement of Copyright under the Copyright Act; (6) Statutory Trademark Infringement under North Carolina Gen. Stats. §80 et. seq.; (7) Unfair and Deceptive Trade Practices under North Carolina Gen. Stats. §75 et. seq.; and (8) Common law unfair competition and trademark infringement.

After receiving the First Amended Complaint, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(2), (Doc. No. 7), to which Plaintiff's filed a Memorandum in Opposition (Doc. No. 8). Defendants then filed a Reply. (Doc. No. 9). This Court issued an Order to Show Cause on March 19, 2018. (Doc. No. 11). Defendants thereafter filed a Response to the Court's Order, (Doc. No. 16), refiled their Motion to Dismiss pursuant to Rule 12(b)(2), (Doc. No. 13), and Defendants' counsel filed a Motion to Withdraw, (Doc. No. 15). On April 23, 2018, Plaintiff filed its preliminary injunction against Defendants, (Doc. No. 22). On June 1, 2018, a hearing was held. Defendants Luis Maestre and Andriana Teran appeared *pro se*. No counsel appeared to represent Defendant La Michoacana.

Based on the new acts and recent conduct of Defendants as well as newly discovered evidence as is detailed in the Declaration of Stephen L. Anderson (Doc. No. 22-1), Plaintiff LA MICHOACANA NATURAL, LLC has moved for a Preliminary Injunction (Doc. No. 22) to preserve the status quo and to restrain Defendants from selling or transferring the allegedly infringing domain name www.lamichoacanapaleteria.com, to restrain Defendants from offering and distributing software applications via the World Wide Web, and to stop Defendants from unlawfully copying, infringing and using Plaintiff's Registered North Carolina

Marks, namely, "**LA MICHOACANA**", "**La MICHOACANA es... Natural**"  ,

 , its Licensor's Federally Registered marks LA FLOR DE MICHOACAN and

 as well as its longstanding Federally applied-for Marks, namely "**LA**

**MICHOACANA**", "**La MICHOACANA Natural**"  , and closely related

derivatives, namely  , and/or any other colorable simulation or mark which is

likely to cause consumer confusion or deception therewith.

## CONCLUSIONS OF LAW

A preliminary injunction is an extraordinary remedy, the primary function of which is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). Courts evaluating a request for a preliminary injunction "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding such request." Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 542 (1987). A plaintiff seeking a preliminary injunction must establish the following four elements: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. Winter v. Natural Res.

Def. Council, Inc., 555 U.S. 7, 20 (2008). In this case, all four elements have been established by Plaintiff.

## A. Plaintiff is likely to succeed on the merits.

To prevail on a trademark infringement claim, the plaintiff must show that it owns a valid and protectable mark, that the defendants used a "re-production, counterfeit, copy, or colorable imitation" of that mark in commerce without the plaintiff's consent, and that use of the mark is likely to cause confusion. Swatch AG v. Beehive Wholesale, LLC, 739 F.3d 150, 158 (4th Cir. 2014). This Court finds that Plaintiff is likely to prove that its Marks are valid and protectable. Plaintiff's North Carolina Registrations (N.C. Registration Nos. T-22395 to T-22403) are *prima facie* evidence of the validity of their North Carolina Marks, ownership by the registrant, and proper registration under the Lanham Act. Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd., 799 F. Supp. 2d 558, 569 (M.D.N.C. 2011). Defendants bear the burden of overcoming this presumption of validity, and they have not done so. This Court concludes that Plaintiff is likely to establish the first element of its claim, ownership of a valid and protectable trademark.

This Court finds that Plaintiff is also likely to establish the second element of its infringement claim. A visual comparison of the Marks at issue in this case shows that Defendants have used identical and colorable simulations of Plaintiff's Marks in various forms, including in and on their ice cream parlor stores and products, on their websites, and in their downloadable software applications which Defendants are distributing worldwide in several different languages.

This Court also finds that Plaintiff has shown that it is likely to prove a likelihood of confusion. In determining the likelihood of confusion, courts in the Fourth Circuit apply the Pizzeria Uno/Sara Lee multi-factor test, which evaluates: (1) "the strength or distinctiveness of the mark;" (2) "the similarity of the two marks;" (3) "the similarity of the goods/services the marks identify;" (4) "the similarity of the facilities the two parties use in their businesses;" (5) "the similarity of advertising used by the two parties;" (6) "the defendant's intent;" (7) "actual confusion;" "(8) the quality of the defendant's product; and (9) the sophistication of the consuming public." Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984) (setting forth factors one through seven); Sara Lee Corp v. Kayser-Roth Corp., 81 F.3d 455, 463–64 (4th Cir. 1996) (identifying factors eight and nine). Based on the record evidence, this Court finds that the first seven factors and the ninth factor weigh in favor of Plaintiff. The eighth factor is at least neutral; however, the factors are not of equal importance, nor are they all relevant in every case. Id. Notably, at this time the important second, third, and fourth factors weigh in favor of Plaintiff. The marks are highly similar, contain the same commercial connotation and they are associated with identical goods and services—ice cream and ice cream parlors. The parties also use identical facilities in their business: both Plaintiff's and Defendants' products are sold in retail ice cream parlors. Given the weight of these factors and the pre-discovery status of this case, the Court finds that consumer confusion is likely.

Plaintiff has also asserted that the Defendants are in violation of the Cyberpiracy Prevention provisions of the Lanham Act. Plaintiff has submitted

evidence showing that Defendant Luis Maestre, doing business as "maid express", claimed to be residing in a Post Office Box in North Carolina while according to Defendants' own submissions to this Court, he has been out of the Country, living in Colombia, South America, since 2016. Plaintiff has also shown that after filing a Motion in this action, Defendants recently concealed their ownership and whereabouts and changed the registrant contact data for the domain name lamichoacanapaleteria.com to "private" and has designated a private domain registration service as the Registrant of such domain name. Further, Plaintiff has shown that Defendants have recently publicly listed the domain name (which is the subject of the Fourth Cause of Action) as being offered for sale for the sum of $85,000, and has also verbally threatened to sell such infringing domain name to a "man in Panama for $40,000". (Decl. of Stephen L. Anderson, Doc. 22-1).

**B. Plaintiff is likely to suffer irreparable harm without an injunction.**

In a Lanham Act trademark infringement case in the Fourth Circuit, "a presumption of irreparable injury is generally applied once the plaintiff has demonstrated likelihood of confusion, the key element in an infringement case." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 273 (4th Cir. 2002); see also Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd., 799 F. Supp. 2d 558, 579-80 (M.D.N.C. 2011) (noting that this "commonly-applied presumption" has not been altered by the Supreme Court's holding in eBay Inc. v. MercExchange, *L.L.C.*, 547 U.S. 388 (2006)). In this case, the Plaintiff and its predecessors in-interest have been

using the mark in Mexico, since approximately 1942, in Florida since 1999 and in North Carolina since 2014.

Each of the parties utilizes internet websites, and Facebook pages to promote their businesses and each of the parties' ice cream stores located in the same general proximity.

The Court concludes from the record evidence and testimony that the consumer confusion that is likely to result from Defendants' use of the LA MICHOCANA marks at issue would cause irreparable harm, especially because it would be very difficult to quantify. Moreover, Defendants' cyber activity, its apparent intent in adopting a similar mark as was used previously by Plaintiff in this State, and Defendants acts of offering and distributing an infringing software application worldwide is further likely to cause Plaintiff irreparable harm for which monetary damages would not suffice.

## B. The balance of equities tips in Plaintiff's favor.

Courts considering preliminary injunctions must balance the immediate and irreparable harm to the plaintiff against any harm to the defendant. Meineke Car Care Centers, Inc. v. Catton, 3:10-CV-000234-RLV-DSC, 2010 WL 2572875 (W.D.N.C. June 24, 2010). The record evidence and testimony demonstrate that Plaintiff's Marks have been in use throughout Mexico since the 1940s, in as many as 18 ice cream stores in Florida since 1999 and at two stores in Charlotte, North Carolina since 2014. On the other hand, Defendants have not presented any evidence that they would suffer cognizable harm that would counterbalance the likely irreparable

harm to Plaintiff's goodwill and its revenue from its longstanding LA MICHOACANA

Marks; therefore, the Court finds that the equities weigh in favor of Plaintiff.

### D. A preliminary injunction would serve the public interest.

Trademarks exist to protect the public from "being misled as to the identity of

the enterprise from which goods and services are obtained." AMP Inc. v. Foy, 540 F.2d

1181, 1185–86 (4th Cir. 1976). Preventing trademarks from being used deceptively

protects the public and serves the public interest. Toolchex, v. Trainor, 634 F. Supp.

2d 586, 594 (E.D. Va. 2008) (citing Bowe Bell & Howell Co. v. Harris, 145 F. App'x

401, 404 (4th Cir. 2005) (unpublished) (affirming a grant of a preliminary

injunction)). In addition, protecting the interests of trademark owners serves the

public interest. Toolchex, 634 F. Supp. 2d at 594 (citing NaturaLawn of Am., Inc. v.

W. Group, LLC, 484 F.Supp.2d 392, 404 (D. Md. 2007)).

Granting an injunction serves the public interest because enjoining

Defendants' use of Plaintiff's LA MICHOACANA and the Indian girl doll designs in

connection with ice cream goods and services, both online and in physical stores, will

protect the public from confusion, lessen the likelihood of deception and temporarily

protect Plaintiff's ownership interest in its Marks.

Finding that all four elements necessary for a preliminary injunction are

established, the Court turns to the question of a bond. The Federal Rules of Civil

Procedure state that a "court may issue a preliminary injunction … only if the movant

gives security in an amount that the court considers proper to pay the costs and

damages sustained by any party found to have been wrongfully enjoined or

restrained." Fed. R. Civ. P. 65(c). The amount of bond is within the Court's discretion. Pashby v. Delia, 709 F.3d 307, 332 (4th Cir. 2013); Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411 (4th Cir. 1999).

This Court determines that an appropriate bond amount is ten thousand dollars ($10,000).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction, (Doc. No. 22), is **GRANTED** and the Court hereby preliminarily enjoins all Defendants, their directors, officers, agents, servants, employees and attorneys, and all others in active concert or participation with them, from:

1. engaging either directly or indirectly in any activity involving the marketing, advertising, promotion, or selling of any goods or services in connection with Plaintiff's North Carolina Marks (N.C. Registration Nos. T-22395 to T-22403), applied for Federal Marks (U.S. Application Serial Nos. 78/954,490 and 85/405,347), and/or any colorable simulation, designation or mark which is likely to be confused therewith until the final disposition of the above-captioned matter. Defendants shall have at least 10 days after entry of this Order to remove, or cause to be removed, all signage, menus, brochures, decals, uniforms, logos, product packaging, cups and tableware, products, display material, marketing and advertising materials and the like, and any other publically displayed materials that were previously put into commerce that bear Plaintiff's LA MICHOACANA

Marks or any colorable simulation or confusingly similar marks and shall cause the same to be destroyed.

2. using, distributing, selling, offering, providing or displaying any software applications which feature, contain or display any of Plaintiff's trademarks and/or any other colorable simulation or mark which is likely to be confused therewith or otherwise engaging in any unfair or deceptive trade practices or misappropriation of Plaintiff's trademarks and goodwill by, among other things, using or displaying any of the aforementioned trademarks, websites, software applications and images until the final disposition of the above-captioned matter; and

3. transferring, selling, moving, hypothecating or and/or offering for sale, the Internet domain name <www.lamichoacanapaleteria.com> and further ordering that the domain name www.lamichoacanapaleteria.com be locked and may not be sold or transferred to anyone other than the Plaintiff until the final disposition of the above-captioned matter.

Signed: June 1, 2018

_____

Robert J. Conrad, Jr.
United States District Judge