.UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00727-RJC-DCK

| | | |
|---|---|---|
| LA MICHOACANA NATURAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | SUMMARY JUDGMENT |
| LUIS MAESTRE, an individual, d/b/a | ) | ORDER |
| LA MICHOACANA and/or LA LINDA | ) | |
| MICHOACANA et al. | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on (1) Plaintiff's Motion for Partial Summary Judgment, (Doc. No. 64); (2) Plaintiff's Motion for Second Preliminary Injunction, (Doc. No. 61); and Plaintiff's associated briefs and exhibits. To date, Defendants have not filed a response to the pending motions.

## I.    BACKGROUND

Despite the Court extending wide latitude to Defendants to comply with Plaintiff's discovery requests and this Court's various orders compelling discovery, the record indicates Defendants' repeated pattern of evading discovery and failing to comply with Court orders. To date, it appears that Defendants have not responded to Plaintiff's Request for Admissions to Luis Maestre. (See Doc. No. 64-9).[1] "Courts within the Fourth Circuit have consistently held that admissions,

---

[1] Defendants sent a package via FedEx to Plaintiff's counsel on March 28, 2019. (Doc. No. 77-1 at 1). Plaintiff's counsel received this package on April 3, 2019. (Doc. No. 77 at 2). Initially, Mr. Anderson, who is lead Plaintiff's counsel in this matter,

1

including unanswered requests for admissions, may provide a sufficient factual basis to support a motion for summary judgment." Aero. Mfg., Inc. v. Clive Merch. Group, LLC, 2007 U.S. Dist. LEXIS 68373, at *5 (M.D.N.C. Sept. 14, 2007) (citing Batson v. Porter, 154 F.2d 566, 568 (4th Cir. 1946)).[2] Accordingly, the Court treats those admissions as a factual basis for summary judgment. Adventis, Inc. v. Consol. Prop. Holdings, Inc., 124 F. App'x 169, 173 (4th Cir. 2005) ("Thus, once a matter that is properly subject of an admission under Rule 36(b) has been admitted during discovery, the district court is not free to disregard that admission."); see also Atad v. Atad, 2015 U.S. Dist. LEXIS 3110, at *1 (E.D.N.C. Jan. 12, 2015).

---

indicated to the Court that he did not bother opening this FedEx package. Then, he represented that he did open the package but could not make heads or tails of the documents and stated that the documents were not responsive to any discovery requests. On May 31, 2019, the Court ordered Mr. Anderson to prepare and file the documents contained in the FedEx package as a pleading. (Id.). Upon examination of the documents, the Court was startled to find that the package contained, among other things, Defendant Luis Maestre's Responses to Plaintiff's Second Set of Requests for Production of Documents and Things to Defendant Luis Maestre, (Doc. No. 77-1 at 2–7), and Defendant Luis Maestre's Responses to Plaintiff's Second Set of Interrogatories to Luis Maestre, (Doc. No. 77-1 at 8–12). Contrary to Plaintiff's representations to the Court, these documents certainly were responsive to discovery requests. The Court is baffled by Mr. Anderson's conduct and representations regarding this incident. As such, the Court finds it proper to deem these responses to discovery requests as timely and admits them to the record. However, Defendants still have not responded to Plaintiff's Request for Admissions, nor have they submitted responses to Plaintiff's pending motions. As such, the addition of these documents to the record does not change the Court's analysis regarding summary judgment.

[2] See also Adventis, Inc. v. Consol. Prop. Holdings, Inc., 124 F. App'x 169, 173 (4th Cir. 2005) ("Rule 36 admissions are *conclusive* for purposes of the litigation and are sufficient to support summary judgment." (quoting Langer v. Monarch Life Ins. Co., 966 F.2d 786, 803 (3d Cir.1992)); In re Fisherman's Wharf Fillet, Inc., 83 F. Supp. 2d 651, 654 (E.D. Va. 1999); Donovan v. Porter, 584 F. Supp. 202, 207–08 (D. Md. 1984)).

Plaintiff has submitted a Statement of Uncontroverted Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment, (Doc. No. 64-4), based on Plaintiff's unanswered Request for Admission to Defendant Luis Maestre, which the Court deems as the statement of undisputed material facts in this case and incorporates herein by reference. Accordingly, the Court finds the following:

1. This Court has jurisdiction over the parties to this action and over the subject matter hereof pursuant to 17 U.S.C. § 101 <u>et seq.</u>, 17 U.S.C. § 501, 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 1367.

2. Plaintiff LA MICHOACANA NATURAL, LLC is a North Carolina limited liability company which owns and operates at least three (3) ice cream parlors doing business as: LA MICHOACANA and LA MICHOACANA NATURAL in North Carolina. Two are located in Charlotte, respectively at 6301 N. Tryon Street, Unit 115 and 6300 South Boulevard, Unit 100, while the third is located at 1096 Concord Parkway, N., Unit 7 in Concord, North Carolina.

3. Plaintiff owns nine (9) North Carolina Trademark registrations for the marks "LA MICHOACANA", "La MICHOACANA es… Natural" (and design)

 and (Indian girl doll design) , in connection with ice cream products, retail store services, and ice cream parlor services, respectively. Plaintiff is also the exclusive North Carolina licensee of Federally applied for marks **"LA**

**MICHOACANA", "La MICHOACANA Natural"**,  as well as the Federally

registered trademarks, namely "**LA MICHOACANA 100% Tradicional**" (and design)

 (U.S. TM Cert. of Registration No. 5143039); **LA FLOR DE**

**MICHOACAN** and LA FLOR DE MICHOACAN (and design)  (U.S. TM

Cert. of Registrations Nos. 2830401 and 3249113.) Plaintiff is also the exclusive

North Carolina user and licensee of a derivative design, namely ![doll] which was

created by Plaintiff's founder's sister in 2014.

4. Plaintiff's Licensor PRODUCTOS LACTEOS TOCUMBO, S.A. de

C.V. ("PROLACTO") is a Mexican Corporation, owned by direct family members of

Plaintiff's founding/managing Member, who with their predecessors, have used the

designations PALETERIA LA MICHOACANA and LA MICHOACANA, in

connection with artisanal and hand-made, ice cream and drinks, in Mexico, since

the 1940's, and who have used and licensed use of the **LA MICHOACANA,** LA

MICHOACANA NATURAL and LA FLOR DE MICHOACAN word and design

marks and Indian girl doll marks, including ![doll] , and ![doll] at least since 1995

in Mexico; at least since 1999 in Florida; at least since 2002 in Houston, Texas; at

least since 2009 in California; and since 2014 in North Carolina.

5. Since the 1940's PROLACTO's and its principal family members and

predecessors have continuously used and made the mark LA MICHOACANA famous in connection with ice cream in Mexico and elsewhere. Since 1999, PROLACTO, Plaintiff's founder and other family-related companies have continuously engaged in the business of operating ice cream parlors and retail stores featuring Mexican-style ice cream, "paletas", ice cream and fruit bars, shakes and fruit drinks and related frozen confections throughout Florida and elsewhere in the United States, ultimately including the Western District of North Carolina.

6. Plaintiff, the exclusive licensee in North Carolina of PROLACTO, and its closely related companies and family licensees, have acquired considerable fame, public recognition and goodwill under the marks LA MICHOACANA, LA MICHOACANA NATURAL, and the Indian Girl doll design as the result of their and their predecessors' continuous use of such marks in connection with ice-cream and ice cream parlors, including in the states of Florida and North Carolina, where the marks are well-known as an indicator of source of high quality Mexican-style ice cream and drinks, originating with PROLACTO and its U.S. licensees, and related companies, particularly including Plaintiff.

7. At least as early as 2014, and at all times alleged in the Complaint, PROLACTO and Plaintiff owned and had acquired valid and protectable trade and service mark rights, a considerable positive reputation, a well-developed market and loyal customer base, in, to and with regard to the LA MICHOACANA and Indian girl doll design(s), which marks had acquired consumer recognition with

Plaintiff, if not a strong brand recognition and special significance in the field of Mexican-style ice cream.

8.  On December 19, 2017, Plaintiff filed its Complaint, (Doc. No. 1), against Defendants alleging the unlawful use of Plaintiff's North Carolina Registered trademarks as well as Plaintiff's licensed trademarks and derivatives. Plaintiff asserted eight causes of action: (1) Trademark infringement under the Lanham Act; (2) Unfair competition and False Designation of Origin under the Lanham Act; (3) Federal Trademark Dilution under the Lanham Act; (4) Cyberpiracy under the Lanham Act; (5) Infringement of Copyright under the Copyright Act; (6) statutory trademark infringement under N.C. Gen. Stat. § 80 et. seq.; (7) N.C. Unfair and Deceptive Trade Practices Act ("N.C. UDTPA") under N.C. Gen. Stat. § 75 et. seq.; and (8) common law unfair competition and trademark infringement.

9.  On June 1, 2018, this action came before this Court on Plaintiff's Motion for Preliminary Injunction. (Doc. No. 22).  After consideration of the parties' briefs, arguments and the evidence presented in the record, including evidence establishing the First, Second and Fourth Causes of Action asserted in the Complaint, this Court granted the Motion, (Doc. No. 30), finding, *inter alia* that Plaintiff had established that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. In the Order granting Plaintiff's Motion, this Court highlighted the unlawful conduct of

Defendants who, without authorization, and despite notice of Plaintiff's rights had adopted, infringed and used the LA MICHOACANA marks, with the intent and effect of confusing the public, misrepresenting the source and origin of their own competing goods, unfairly harming Plaintiff and diluting the LA MICHOACANA Marks.

10.   Defendants have never attempted to dispute nor rebut Plaintiff's evidence which has showed, e.g., that Defendant Luis Maestre, doing business as "Maid Express," claimed to be residing in a Post Office Box in North Carolina while according to Defendants' own submissions to this Court, he had been out of the Country, living in Colombia, South America, since 2016. Further, Plaintiff had shown and Defendants have never denied that in violation of the Cyberpiracy Prevention Act, since appearing in this action: (a) Defendants operated an ice cream store in Concord, North Carolina, concealing their whereabouts and ownership of infringing domain names: {www.lamichoacanapaleteria.com} and {www.lalindamichoacana.com} {www.lamichoacanapaleteria.com.mx}, www.lamichoacanapaleteria.mx, and www.lamichoacanapaleteria_.com. }; (b) changed the registration data for such domain names to "private" by designating a private domain registration service as the Registrant(s) thereof; (c) Defendants publicly listed the "lamichoacanapaleteria.com" domain name as being offered for sale for the sum of $85,000; and (d) Defendant Maestre verbally threatened to sell such infringing domain name to a "man in Panama for $40,000". (Doc. No. 30 at 4–9). Defendant Maestre also registered other closely related domain names.

11. With knowledge of the fame and popularity of Plaintiff and PROLACTO's trademarks and intentionally violating what Defendants knew to be specific rights and registrations in the trademarks, domain names, designs and designations owned by Plaintiff and/OR PROLACTO, including: **LA MICHOACANA,** **LA MICHOACANA NATURAL,**  and/or **LA FLOR DE MICHOACAN** (the "LA MICHOACANA Marks"), Defendants adopted and unlawfully used the LA MICHOACANA Marks and infringing domain names to competitively sell their own goods and services, to confuse the public and to cause harm to the Plaintiff and its Licensor.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). This

8

"burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The nonmoving party may not rely upon mere allegations or denials of allegations in the pleadings to defeat a motion for summary judgment, rather it must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Id. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248–49. "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. Id. at 249–50 (citations omitted).

## IV.    CONCLUSIONS OF LAW

In light of the foregoing, this Court hereby finds that Defendants LUIS MAESTRE; ADRIANA TERAN (aka ADRIANA YOLANDA TERAN FRAUSTO and/or ADRIANA MAESTRE); and LA LINDA MICHOACANA ("Defendants") have no valid claim of any rights, interest or priority or superiority in, nor to, nor any authorization to use, seek, adopt, register or infringe the LA MICHOACANA Marks.  Accordingly, Plaintiff is entitled to summary judgment on its Lanham Act claims (causes of action 1–4; Doc. No. 1 ¶¶ 27–56), and its N.C. UDTPA claim (cause of action 6; Doc. No. 1 ¶¶ 76–80).  During the summary judgment hearing, Plaintiff indicated that it had withdrawn its copyright claim (cause of action 5; Doc. No. 1 ¶¶ 57–66).  Plaintiff further stipulated that it was Plaintiff's position that if the Court could grant summary judgment in Plaintiff's favor on its Lanham Act and N.C. UDTPA claims, Plaintiff could dismiss the remaining causes of action.

### A.    Plaintiff's Lanham Act Claims (Causes of Action 1–4)

The first four causes of action in Plaintiff's Complaint are based upon Defendants' respective violations of the Lanham Act: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition and false designation under 15 U.S.C. §1125(a); (3) federal trademark dilution under 15 U.S.C. § 1125(c);[3] and (4)

---

[3] Under the Federal Trademark Dilution Act ("FTDA"), a plaintiff must show that: (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. 15 U.S.C. § 1125(c); Ringling Bros. v. Utah Div. of Travel Dev., 170 F.3d 449, 452 (4th Cir.1999); Panavision Int'l LP v. Toeppen, 141 F.3d 1316, 1324 (9th Cir.1998).

cybersquatting, in violation of the Anticybersquatting Consumer Protection Act

("ACPA"), under 15 U.S.C. § 1125(d)(1). Defendants have violated the Lanham Act

and infringed upon Plaintiff's and PROLACTO's prior, valid, registered, and

exclusive trademarks and service mark rights in the strong, arbitrary, and famous

LA MICHOACANA Marks, with the intent and effect of causing damage and

dilution thereto. In particular, the public was likely to be confused, mistaken

and/or deceived by Defendant's conduct, which included, *inter alia* using, displaying

and advertising identical copies of The LA MICHOACANA marks, including, LA

MICHOACANA, "La MICHOACANA es… natural" (and design), and Plaintiff's

distinctive design marks featuring a little Indian girl doll and any other colorable

simulations thereof, including "LA MEXICANA" in connection with the promotion

and sale of ice cream, frozen fruits, frozen confections, fruit drinks, and restaurant

or ice cream parlor services at a store located within this District at 280 Concord

Parkway South, Suite 112, Concord, North Carolina, and online, displayed via one

or more of the aforementioned domain names, in social media websites, on

directories, forums, and software applications distributed worldwide. Defendants'

actions are likely to cause and have caused actual confusion, mistake and/or

deception and have damaged and harmed Plaintiff.

This Court finds that with knowledge of Plaintiff and

---

There is no dispute that Plaintiff's trade service marks are famous and that
Defendants' use of Plaintiffs marks is commercial.

PROLACTO's exclusive prior rights in well-known and distinctive LA

MICHOACANA Marks, in bad faith and in violation of the Cyberpiracy provisions

of the Lanham Act, Defendants adopted, used, registered, and infringed the

following confusingly similar domain names: www.lamichoacanapaleteria.com,

www.lamichoacanapaleteria.com.mx, www.lamichoacanapaleteria.mx,

www.lalindamichoacana.com, and www.lamichoacanapaleteria_.com .    In

connection with each of these  domain registrations, and others, Defendant Luis

Maestre provided the domain registrar with materially misleading and false contact

information and failed to maintain accurate administrative contact data; used the

domain names to unlawfully display Plaintiff's LA MICHOACANA Marks with the

intent to confuse and divert consumers from Plaintiff's business for commercial

gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation,

or endorsement of his websites and others, to harm the goodwill of Plaintiff and its

Mexican Licensor. Moreover, Defendants have persistently failed to comply with

their discovery obligations and their duty to respond to Plaintiff's discovery,

including, *inter alia*, that they have not provided any information about their costs

of business or sale, any information regarding any business expenses or offsets, nor

any information regarding their sales or profits since January 2018.

    Under the Lanham Act, a plaintiff may recover injunctive relief as well as

damages for trademark infringement, unfair competition, cybersquatting and

unfair and deceptive trade practices.  Section 1117 of the Lanham Act governs

remedies for violations of its trademark provisions.  Section 1117(a) provides the following:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

Here, Plaintiff seeks to recover both monetary damages and injunctive relief, as well as its attorney fees and costs.

>    1.    <u>Monetary Remedies</u>

>           a.    Defendants' Profits

>                 Plaintiff seeks to recover Defendants' profits made from

the infringing goods and seeks to treble that amount.  In the Fourth Circuit, the following equitable factors are appropriate for a district court to consider when assessing a disgorgement of a defendant's profits under the Lanham Act: (1) whether the defendant had the intent to confuse or deceive, (2) whether sales were

diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of "palming off." See Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 174–75 (4th Cir.2006) (noting the equitable factors used by the Third and Fifth Circuits in determining damages awards under the Lanham Act).

All six of the Synergistic factors favor a disgorgement of Defendants' profits. Here, Defendants have (1) acted in bad faith and with the intent and effect of palming off their infringing goods and services, (2) deceived the public and diverted sales from Plaintiff with respect to their own competitive ice cream business, (3) intentionally ransomed a number of valuable domain names and used them to the detriment of Plaintiff, (4) steadfastly failed to comply with this Court's Orders, (5) registered additional infringing domain names, and (6) taken other intentional and unlawful acts during the pendency of this proceeding. Accordingly, the Court finds that awarding Plaintiff the profits illegally earned by Defendants due to their infringing activities is proper. Nevertheless, the Court disagrees with the amount of damages Plaintiff alleges it is entitled to.

Plaintiff claims that the record shows that Defendant sold at least $534,958.00 in infringing goods (trebled would be $1,604,874). (Doc. No. 64 at 27). Plaintiff arrives at this number by gleaning through Defendants' business tax returns and profits and loss statements ("P&Ls"). (See Doc. No. 64-10). But, by examining the same documents, it is clear that, while Defendants' sales from 2015

to 2017 amounted to $534,958.00, the amount Defendants actually profited was, at most, $62,616.[4]  While Plaintiff only bears the burden of proving Defendants' sales, and Defendants bear the burden of proving all elements of cost or deduction claimed under § 1117(a), Defendants' overall profits for fiscal years 2016 and 2017 are apparent from the exhibits Plaintiff submitted.  (See Doc. No. 64-10 at 3–5).  Although at the summary judgment hearing Plaintiff's counsel informed the Court that it did not want to put Defendants in the poor house by seeking to recover a damages' amount in excess of $1.5 million, Plaintiff initially submitted to the Court that Defendants owe them an amount in excess of $2.6 million in damages.  (See Doc. No. 73: Proposed Summary Judgment Order at 18).

The Court determines that, in these circumstances, the lesser amount of Defendants' alleged profits—$62,616—is the appropriate amount to use as representative of Defendants' actual profits.  Defendants are sole proprietors of a small, mom-and-pop-shop, ice cream store, whose business began at a flea market.  As such, the Court is dubious that Plaintiff is entitled to recover all Defendants' sales from 2015 to 2017 ($534,958.00), rather than just the amount Defendants actually profited from their sale of the infringing goods.[5]

---

[4] This amount includes profits from Defendants' official ice cream business as well as sales from La Michoacana's activities at the flea market:
- 2015: self-reported $155.00 in claimed sales.  (Doc. No. 64-10 at 1).
- 2016: $27,685 profits (ice cream business) + self-reported $10,455 in claimed sales (flea market).  (Doc. No. 64-10 at 2, 13).
- 2017: $ 15,713 profits (ice cream business) + self-reported $8,608 in claimed sales (flea market).  (Doc. No. 64-10 at 2, 21).

[5] The Court declines to award any profits Defendants might have earned from January 1, 2018 until the present.  Plaintiff has submitted no evidence regarding any

Additionally, Plaintiff also asks this Court for treble damages. Under the Lanham Act, a district court has discretion to "enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). However, the statute requires that "[s]uch sum ... shall constitute compensation and not a penalty." Id. Generally, district courts have exercised their authority to treble the damages award and increase the profits award to a trebled amount in cases involving intentional, knowing, deliberate, or willful infringement. See, e.g., Deering, Milliken & Co., Inc. v. Gilbert, 269 F.2d 191,194 (2d Cir.1959) (trebling of profits award appropriate "in view of the deliberate and fraudulent nature of the infringement"); Polo Fashions, Inc. v. Magic Trimmings, Inc., 603 F. Supp. 13, 20 (S.D. Fla. 1984) ("Justice requires that the amount of Defendants' profits awarded to the Plaintiff as damages be trebled" based on finding of willful infringement); Polo Fashions Inc. v. Gentlemen's Corner Wholesale, Inc., 1983 WL 51923, at *1 (D.S.C. 1983) (trebling of actual damages award based on finding of intentional and willful infringement). As one court wrote, "[t]rebling of damages in cases of willful and intentional infringement is designed to provide an economic deterrence to those who contemplate the otherwise lucrative profession of trademark piracy." Gentlemen's Corner Wholesale, 1983 WL 51923, at *1.

---

profits Defendants might have earned after fiscal year 2017, and any award of potential profits from 2018 to present would be wholly speculative and lacking in the requisite degree of certainty and precision for awarding such damages. Indeed, at the summary judgment hearing, Plaintiff acknowledged that the damages' calculation would be difficult to ascertain from January 1, 2018 onward.

In light of Defendants' continuing history of noncompliance with Plaintiff's discovery requests and this Court's orders and the willfulness of Defendants' actions, the Court finds that trebling the damages award of Defendants' profits is warranted. The Court hereby trebles the damages and awards Plaintiff **$187,848**. The Court finds that this amount is just and compensates Plaintiff for Defendants' wrongdoing.

b.    Costs and Attorney Fees

The Lanham Act's section on remedies expressly provides the award of court costs in ACPA cases. 15 U.S.C. § 1125(d)(3) (allowing additional civil remedies); 15 U.S.C. § 1117(a) (providing the additional civil remedies available in trademark cases under the Lanham Act and ACPA).  Accordingly, the Court awards Plaintiff its costs.

Plaintiff contends this action qualifies as an exceptional case under the Lanham Act, entitling it to attorney fees.  Under 15 U.S.C. § 1117(a), the Court "in exceptional cases may award reasonable attorney fees to the prevailing party."  An award "[is] not to be made as a matter of course, but rather as a matter of the court's considered discretion . . . ."[6] Ale House Management, Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 144 (4th Cir. 2000).

The Court takes this request under advisement and orders Plaintiff to submit to the Court within **twenty (20) days** of the entry of this order a Motion for Attorney

---

[6] Ale House Management, Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 144 (4th Cir. 2000).

Fees and Costs, including appropriate affidavits and other information, supporting its request.

2. <u>Injunctive Relief</u>

Plaintiff is also entitled to injunctive relief under the Lanham Act because Defendants' use of the LA MICHOACANA, LA LINDA MICHOACANA and LA MEXICANA Marks as well as the Indian girl doll design infringes upon Plaintiff's and its Licensors' trademarks. 15 U.S.C. § 1116(a).[7] Regarding Plaintiff's fourth cause of action—Defendants' cybersquatting violation under 15 U.S.C. § 1125(d)(1)—§ 1117(d) provides that "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." Here, because the Court considers the amount of Defendants' profits—trebled—to

---

[7] "The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found." 15 U.S.C. § 1116(a).

be a just award for Plaintiff, and because the Court has discretion in fashioning damages' awards under the Lanham Act,[8] the Court declines to impose additional statutory damages for Defendants' cybersquatting violations. Nevertheless, the Court will grant Plaintiff's requested injunctive relief as follows:[9]

1. Defendants and their officers, directors, employees, agents, representatives, and their respective licensees, successors, and heirs, if any, and all of those in active concert or participation with them who receive actual notice of the Injunction are hereby permanently restrained and enjoined from engaging either directly or indirectly in any activity involving the marketing, advertising, promotion, or selling of any goods or services in connection with the marks **LA MICHOACANA, LA MICHOACANA NATURAL,**  or and/or

 **LA FLOR DE MICHOACAN,** and/or any colorable simulation, designation

---

[8] "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

[9] Initially, in its Preliminary Injunction Order, the Court prohibited Defendants from "transferring, selling, moving, hypothecating or and/or offering for sale, the Internet domain name <www.lamichoacanapaleteria.com>" and further ordered that "the domain name www.lamichoacanapaleteria.com be locked" and could not be sold or transferred to anyone other than" Plaintiff until the final disposition of this matter. (Doc. No. 30 at 11). Since that time, Plaintiffs have registered four additional infringing domain names: (1) www.lamichoacanapaletaria.com.mx; (2) www.lamichoacanaplaeteria.mx; (3) www.lalindamichoacana.com; and (4) www.lamichoacanapaleteria_.com. (See. Doc. No. 61 at 1–2).

or marks, including, without limitation "LA MEXICANA", alone or in combination with any other mark(s), designation(s), symbol(s), word(s), term(s), device, number(s) and/or design(s), on or in connection with any product, service or activity including, without limitation, ice cream, fruit ice confections, fruit drinks and ice cream parlor services,

2. Defendants are ordered to immediately transfer the following infringing domain names to the Plaintiff:

www.lamichoacanapaleteria.com

www.lamichoacanapaleteria.com.mx

www.lamichoacanapaleteria.mx

www.lalindamichoacana.com   and

www.lamichoacanapaleteria_.com.

Any and all registrars and registries for such Domain Names with notice of this Order shall promptly, within not more than **twenty-four (24) hours**, disable the Domain Names, through a registry hold or otherwise, and prevent its transfer to anyone other than Plaintiff, and further shall, within **fourteen (14) days** of receipt of notice of this Order, change the Registrar of Record for the Domain Names to a Registrar of Plaintiffs' choosing.

3. Defendants their owners, officers, directors, employees, agents, representatives, attorneys and all persons acting directly or indirectly with them who receive notice of this order are hereby permanently **RESTRAINED and ENJOINED** from registering, using, trafficking in, or hypothecating any domain

names that contain any of the terms "la," "mich," and/or "cana", or otherwise allowing the continued use of any such domain names by anyone other than Plaintiff.

5. This Permanent Injunction is continuing in nature and shall be binding on any and all successors, assigns or heirs of Defendants and each of them. Defendants are particularly ordered that, should they sell or license any interest in any business in the next ten (10) years, they must serve a copy of this Order on each successor and assign.

6. Defendants shall give notice of this Final Judgment and Permanent Injunction to all domain registrars and all persons within their control or employment (whether as independent contractors, employees, agents, partners, or in any other capacity). Defendants shall further take reasonable steps sufficient to monitor and ensure that all those acting in active concert or participation with them receive notice of and comply with this Order, including, but not limited to, providing a copy of this Order to any person within their control or employment and requesting that such person adhere to its terms.

7. This Permanent Injunction is a final judgment for purposes of disposition of this action. The Court finds there is no just reason for delay in entering this Injunction and pursuant to Rule 54(a) of the Federal Rules of Civil Procedure, the Court directs immediate entry of this Injunction against Defendants.

### B.   Plaintiff's N.C. UDTPA Claim

"A claim under North Carolina's UDTPA, N.C. Gen. Stat. § 75-1.1 *et*

*seq.*, requires a showing that (1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." Design Res., Inc. v. Leather Indus. of Am., 2014 U.S. Dist. LEXIS 114950, at *38 (M.D.N.C. Aug. 19, 2014). "Trademark infringement and false designation of origin are deceptive and unfair acts; if a plaintiff proves a violation of the Lanham Act, which affected commerce, and injured plaintiff, plaintiff is entitled to summary judgment on claims brought under North Carolina's UDTP[A]." Shell Trademark Mgmt. BV & Motiva Enterprises, LLC v. Ray Thomas Petroleum Co., 642 F. Supp. 2d 493, 505 (W.D.N.C. 2009); see also Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 2007 U.S. Dist. LEXIS 68345, at *44 (M.D.N.C. Sept. 14, 2007), aff'd, 618 F.3d 417 (4th Cir. 2010) ("Since North Carolina's [UDTPA] prohibits the same type of activity that the Lanham Act prohibits in this case, the court finds that Defendant has violated the [UDTPA]." (citing Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir. N.C. 1987)). "Treble damages are assessed automatically upon a violation of N.C. Gen. Stat. § 75-1.1." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir. N.C. 1987).

Here, the Court finds that Defendants' actions, as outlined above, constitute unfair and deceptive practices affecting commerce and injuring Plaintiff. Particularly, the Court is troubled by Defendants' registration of four additional infringing domain names and Defendants' threat to sell and attempted sale of the initial domain name to third parties subsequent to the Court's order prohibiting them from such conduct. The Court determines that Defendants' conduct which

entitled Plaintiff to summary judgment on its Lanham Act claims also entitles Plaintiff to entry of summary judgment in its favor on its N.C. UDTPA claim. <u>See Universal Furniture Int'l, Inc.</u>, 2007 U.S. Dist. LEXIS 68345, at *43. Because the Court has already chosen, in its discretion, to treble Plaintiff's damages under the Lanham Act, Defendants' violation of the N.C. UDTPA does not change the damages' analysis.

### C.  Plaintiff's Motion for Second Preliminary Injunction

Because Plaintiff's Motion for Second Preliminary Injunction, (Doc. No. 61), asks for the same relief as requested in its Motion for Summary Judgment, (Doc. No. 64), the Court **DENIES** this Motion as **moot**.

## IV.  CONCLUSION

Defendants have been found to have violated the Lanham Act, sections 1114(a), 1125(a), 1125(c) and 1125(d)(1) as well as North Carolina's UDTPA codified at N.C. Gen. Stat. § 75-1.1 and 80.  Plaintiff is therefore entitled to all remedies provided for and described above. These remedies include transfer of control of the five domain names to Plaintiff, as well as the disgorgement of Defendants' profits, and an award of court costs as expressly granted by statute.  Plaintiff is also entitled to seek an award of attorney fees under § 1117(a).

**IT IS THEREFORE ORDERED THAT:**

1.  Plaintiff's Motion for Partial Summary Judgment, (Doc. No. 64), is

    **GRANTED**.  Defendants are **DIRECTED** to **PAY** Plaintiff **$187,848** in

    damages and to **COMPLY WITH and ABIDE BY** the **INJUNCTIVE**

**ORDERS** of this Court as outlined above. Because the Court has granted summary judgment in Plaintiff's favor on causes of action 1–4 and 6, and in light of Plaintiff's stipulation to the Court that it could dismiss the remaining causes of action if summary judgment was granted in its favor on its claims under the Lanham Act and N.C. UDTPA, Plaintiff is hereby **DIRECTED** to file a **STIPULATION OF DISMISSAL** regarding the remaining claims (causes of action 5–6 and 8);

2. Plaintiff's Motion for Second Preliminary Injunction, (Doc. No. 61), is **DENIED as MOOT**; and

3. Plaintiff is **ORDERED** to file a **MOTION FOR ATTORNEY FEES AND COSTS**, with any supporting affidavits and exhibits, within **TWENTY (20) DAYS** of this Order.

Signed: June 6, 2019

Robert J. Conrad, Jr.
United States District Judge

24