**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No. 3:17-cv-00727-RJC-DCK**

LA MICHOACANA NATURAL, LLC,

           Plaintiff,

v.

LUIS MAESTRE, an individual, d/b/a LA
MICHOACANA and/or LA LINDA
MICHOACANA et al.,

           Defendants.

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION**
**FOR RELIEF FROM SUMMARY JUDGMENT ORDER (DOC. 78);**
**TO VACATE THE ORAL ORDER STRIKING DEFENDANTS' ANSWER AND**
**COUNTERCLAIM (DOC. 48);**
**FOR SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS;**
**TO DISSOLVE THE PRELIMINARY INJUNCTION (DOC. 30);**
**TO REVOKE THE PRO HAC VICE ADMISSION OF STEPHEN ANDERSON (DOC. 5);**
**AND FOR MONETARY SANCTIONS**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    STATEMENT OF FACTS ........................................................................................3

       A.     This Lawsuit and Defendants' Lack of Legal Representation.................................3

       B.     Plaintiff Led the Court to Believe Defendants Did Not Respond to the RFAs
              ..........................................................................................................................................3

       C.     The Court Granted Summary Judgment Based On the Erroneous Belief that
              Defendant Maestre Never Responded to the RFAs ................................................6

       D.     Defendants' Responses to the RFAs Prevent Summary Judgment for
              Plaintiff ..........................................................................................................................7

       E.     Other Misconduct by Plaintiff's Counsel ..............................................................7

       F.     Defendants' Continuous Use of the "Michoacana" Marks Dates Back to
              2008.................................................................................................................................9

       G.     Defendants' Prior Continuous Use of the "Indian Girl" Mark Since 2013 ............9

       H.     Plaintiff's Use of the "Michoacana" and "Indian Girl" Marks in North
              Carolina.......................................................................................................................11

III.   RELIEF FROM THE SUMMARY JUDGMENT ORDER IS WARRANTED .............12

       A.     Legal Standard ............................................................................................................12

       B.     Defendants Have Met the Threshold Requirements of Rule 60(b).......................13

              1.     Defendants' Motion is Timely .................................................................13

              2.     Defendants Have Asserted the Meritorious Defense of Prior Use ...........13

              3.     Plaintiff Will Not Suffer Unfair Prejudice.............................................16

       C.     Relief is Warranted Under Rule 60(b)(3) .............................................................17

       D.     Relief Is Warranted Under Rule 60(b)(1) .............................................................17

       E.     Relief Is Warranted Under Rule 60(b)(6) .............................................................19

IV.    SUMMARY JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS AND
       THE PRELIMINARY INJUNCTION SHOULD BE DISSOLVED ..............................19

V.     MR. ANDERSON'S PRO HAC VICE ADMISSION SHOULD BE REVOKED...........20

       A.     Mr. Anderson Was Not Candid With the Court ....................................................20

       B.     Mr. Anderson Abused the Discovery Process ......................................................22

       C.     Mr. Anderson Harassed, Threatened, Bullied and Intimidated Individuals ..........23

VI.    SANCTIONS ARE ALSO WARRANTED ................................................................24

VII.   CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

Federal Cases

*Aikens v. Ingram*
    652 F.3d 496 (4th Cir. 2011) (en banc) ...............................................................19

*Allard Enters., Inc. v. Advanced Programming Res., Inc.*
    146 F.3d 350 (6th Cir. 1998) ...............................................................14, 16

*Aramark Unif. & Career Apparel, LLC v. Hernandez*
    No. 7:16-CV-336-BR, 2018 WL 651336 (E.D.N.C. Jan. 31, 2018).......................17

*Bowers v. Univ. of Virginia*
    No. CIV. A. 3:06CV00041, 2008 WL 2346033 (W.D. Va. June 6, 2008)............24

*Boyd v. Bulala*
    905 F.2d 764 (4th Cir. 1990) ...............................................................13

*Cargill, Inc. v. WDS, Inc.*
    No. 316CV00848FDWDSC, 2018 WL 3614040 (W.D.N.C. July 27, 2018).........22

*Cent. Operating Co. v. Util. Workers of Am.*
    491 F.2d 245 (4th Cir. 1974) ...............................................................13

*Chambers v. NASCO, Inc.*
    501 U.S. 32 (1991)...............................................................22, 24

*Compton v. Alton S.S. Co.*
    608 F.2d 96 (4th Cir. 1979) ...............................................................12, 16

*Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*
    383 F.2d 249 (4th Cir. 1967) ...............................................................12

*Emergency One, Inc. v. Am. Fire Eagle Engine Co.*
    332 F.3d 264 (4th Cir. 2003) ...............................................................14

*Haeger v. Goodyear Tire & Rubber Co.*
    906 F. Supp. 2d 938 (D. Ariz. 2012), *aff'd,* 793 F.3d 1122 (9th Cir. 2015), and
    *aff'd,* 813 F.3d 1233 (9th Cir. 2016), and *vacated and remanded,*
    869 F.3d 707 (9th Cir. 2017) ...............................................................8, 24

*Horton v. Dobbs*
    No. 1:09CV114, 2011 WL 1899760 (N.D.W. Va. May 19, 2011).........................24

*Intellect Wireless, Inc. v. HTC Corp.*
  910 F. Supp. 2d 1056 (N.D. Ill. 2012), *affirmed*, 732 F.3d 1339
  (Fed. Cir. 2013) ..............................................................................................25

*Klapprott v. United States*
  335 U.S. 601 (1949) ..........................................................................................19

*Margoles v. Johns*
  798 F.2d 1069 (7th Cir. 1986) ...........................................................................19

*McLean v. Miller*
  No. 1:16CV991, 2018 WL 3014827 (M.D.N.C. June 15, 2018),
  *report and recommendation adopted*, No. 1:16CV991, 2018 WL 3581713
  (M.D.N.C. July 25, 2018) ...................................................................................17

*Murchison v. Astrue*
  466 F. App'x 225 (4th Cir. 2012) ................................................................12, 19

*Nat'l Credit Union Admin. Bd. v. Gray*
  1 F.3d 262 (4th Cir. 1993) .................................................................................19

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*
  188 F. Supp. 3d 22 (D.D.C. 2016), *aff'd*, 743 F. App'x 457 (D.C. Cir. 2018) .............2, 15, 18

*Reid v. Angelone*
  369 F.3d 363 (4th Cir. 2004) (*abrogated on other grounds by United States v. McRae*, 793 F.3d 392 (4th Cir. 2015)) .....................................................................19

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*
  818 F.3d 1320 (Fed. Cir. 2016) .........................................................................17

*Rogers v. AC Humko Corp.*
  56 F. Supp. 2d 972 (W.D. Tenn. 1999) .............................................................24

*Ryan v. Astra Tech, Inc.*
  772 F.3d 50 (1st Cir. 2014) ...............................................................................20

*Satterfield v. City of Chesapeake, Virginia*
  No. 2:16-CV-665, 2019 WL 5280969 (E.D. Va. Jan. 16, 2019) ........................24

*In re Savage*
  303 B.R. 766 (Bankr. D. Md. 2003) ...................................................................17

*Simmons-Blount v. Guilford Cty. Bd. of Educ.*
  No. 1:06-CV-944, 2009 WL 962266 (M.D.N.C. 7 Apr. 2009) ...........................17

*Square Const. Co. v. Wash. Metro. Area Transit Auth.*
  657 F.2d 68 (4th Cir. 1981) ...............................................................................17

*Telesis Cmty. Credit Union v. Mantiff 1215 Statesville Hosp., LLC*
  at *1 (W.D.N.C. Mar. 5, 2010) ................................................................20

*Tolson v. Hodge*
  411 F.2d 123 (4th Cir. 1969) .................................................................12

*United States v. Moradi*
  673 F.2d 725 (4th Cir. 1982) .................................................................13

*Werner v. Carbo*
  731 F.2d 204 (4th Cir. 1984) ............................................................12, 16

*Estate of Williams v. Radford*
  No. 1:18-cv-00182-MR-WCM, 2018 WL 6065423
  (W.D.N.C. Nov. 20, 2018) .....................................................................23

State Cases

*Lendus, LLC v. Goede*
  No. CV 2018-0233-SG, 2018 WL 6498674 (Del. Ch. Dec. 10, 2018)...................23

*Sisk v. Transylvania Cmty. Hosp., Inc.*
  364 N.C. 172 (2010) .............................................................................23

Federal: Statutes, Rules, Regulations, Constitutional Provisions

15 U.S.C. § 1057 ...................................................................................16

28 U.S.C. § 1927 ...................................................................................24

FRCP 36 ..............................................................................................17

FRCP 56(f) ...........................................................................................19

FRCP 56(h) ..........................................................................................24

FRCP 60(b) ....................................................................................... *passim*

FRCP 60(b)(1)-(6) .................................................................................12

FRCP 60(b)(3) ..................................................................................13, 17

FRCP 60(b)(6) ..................................................................................13, 19

FRCP 60(c)(1) .......................................................................................13

Case 3:17-cv-00727-RJC-DCK   Document 107   Filed 11/21/19   Page 5 of 32

State: Statutes, Rules, Regulations, Constitutional Provisions

N.C. Gen. Stat. § 80-1.1 ............................................................................................15

N.C. Gen. Stat. § 80-13 .............................................................................................15

N.C. Rules of Professional Conduct ..........................................................................23

N.C. Rev. Rules of Professional Conduct 3.3....................................................20, 22

N.C. Rev. Rules of Professional Conduct 4.4............................................................23

N.C. Rev. Rules of Professional Conduct 4.4(a) .......................................................23

N.C. Rev. Rules of Professional Conduct 8.4(d) (2019) ...........................................23

Other Authorities

Black's Law Dictionary 149 (8th ed.2004).................................................................24

11 Fed. Prac. & Proc. Civ. § 2857 (3d ed.)...............................................................12

SMRH:483362993.2

## I. INTRODUCTION

Defendants seek relief under FRCP 60(b) from the Court's summary judgment order, (Doc. 78), because it was based on the mistaken belief that Defendants never responded to Plaintiff's first set of Requests for Admission ("RFAs"). ***Defendants responded to these RFAs on July 23, 2018***. (Maestre Dec. ¶32-33 and Ex. 10 thereto; Doc. 31 at 4; Doc. 31-1 at ¶ 10; Johnson Dec. at ¶¶ 1-4). Four days later, on July 27, 2018, Plaintiff's counsel, Stephen Anderson, stated in a sworn declaration that he received these RFA responses. (Doc. 31-1 at ¶ 10; see also Doc. 31 at 4).

But after that, Mr. Anderson began denying he received the responses to the RFAs. For example, on February 22, 2019, Plaintiff filed a motion for sanctions supported by a declaration from Mr. Anderson that falsely states, "Defendants have failed to provide any responses to … Plaintiff's First Set of Request For Admissions…" (Doc. 58-1, ¶ 5).

And in in the summary judgment filings, Plaintiff led the court to believe that Defendants never responded to the RFAs. (Doc. 64 at 7-8; *see also* Doc. 64 at 15 (citing case law regarding "unanswered requests for admissions"); Doc. 64-3 at ¶ 7). Mr. Anderson stated at the hearing on the summary judgment motion, "we never received responses [to] the requests for admissions." (Chapman Dec. Ex. 3, at 11:4-5). After counsel for Defendants disputed this, the Court asked, "Mr. Anderson, have you received any responses to your request to admit?," Mr. Anderson responded, "Not that I'm aware of, Your Honor. I don't have any in my file." (Id. at p. 12, lines 6 – 20). This was false. (Doc. 31-1 at ¶ 10).

Based on Mr. Anderson's false statements, the Court struck Defendants' answer and counterclaims, deemed Plaintiff's RFAs admitted, and granted summary judgment based on "unanswered" RFAs. (Doc. 78 at 1-3). The Court cited Plaintiff's summary judgment filings in its order granting summary judgment, stating, "To date, it appears that Defendants have not responded to Plaintiff's Request for Admissions to Luis Maestre. (See Doc. 64-9)," not knowing

Defendants had responded months earlier. (Maestre Dec. ¶32-33 and Ex. 10; Doc. 31-1 at ¶ 10)

The RFA responses defeat summary judgment. Defendant's response to RFA 36, which asserts that Defendants used "La Michoacana" to confuse consumers, states, "Deny. I have been using the name 'La Michoacana' since 2008." (Exs. 9 and 10 to Maestre Dec.) This assertion supports a prior use defense and defeats summary judgment for Plaintiff. Plaintiff's counsel, as a seasoned trademark lawyer who has litigated the issue of priority of use, had to have known this. (Doc.31-1, ¶ 13) (Mr. Anderson describing himself under oath as a seasoned trademark litigation attorney); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 83 (D.D.C. 2016), *aff'd*, 743 F. App'x 457 (D.C. Cir. 2018) (Mr. Anderson represented the defendant in this case about priority of use).

After the Court entered summary judgment based on the erroneous belief that Defendants had not responded to the RFAs, ***Plaintiff's counsel did not correct the Court's error***.

A motion for relief under Rule 60(b) must be timely, must show that the moving party has a meritorious defense, and must not unfairly prejudice the opposing party. Each element is met here. First, this motion is timely, being made less than six months after the summary judgment order was issued. Second, there is a meritorious defense of priority of use, supported by ample evidence, as explained in detail below and in the declarations filed in support of this motion. Third, correction of the error resulting from Plaintiff's misrepresentations would further the interest of justice, not create any unfair prejudice.

The only unfair prejudice in this case has resulted from Plaintiff's counsel's improper acts. He made repeated misrepresentations to the Court stating that Defendants did not respond to the first set of RFAs. He threatened a potential witness the day before the first hearing on the motion for preliminary injunction, telling her he would burn down a building with her in it. This incident

was captured on a video surveillance camera and the image in the declarations filed herewith shows Mr. Anderson threatening the witness while making an obscene gesture in her face. (Mendoza Dec. at ¶¶ 1-7; Garcia Dec. at ¶¶ 1-8; Chapman Dec. at ¶ 2 and Ex. 4 (notes of the Concord, North Carolina Police Department of the incident depicted in the declarations). ***This*** is the unfair prejudice that warrants correction.

## II.  STATEMENT OF FACTS

### A.  This Lawsuit and Defendants' Lack of Legal Representation

This action alleges trademark infringement and related claims. Defendants are of limited means and have limited English language skills. Since the filing of this lawsuit, they have for the most part, been unrepresented by counsel. (Maestre Dec. at ¶¶ 27, 30, 33, 41). Plaintiff has been aware of Defendants' limited English language skills throughout this matter. (Doc 31-2, p. 41, email from Plaintiff's counsel dated June 6, 2018 asking if Defendants want an interpreter).

### B.  Plaintiff Led the Court to Believe Defendants Did Not Respond to the RFAs

On June 15, 2018, when Defendants were unrepresented by counsel[1], Plaintiff served the RFAs by mail. (Doc. 64-9 at 1-12; Maestre Dec. at ¶¶ 32-33). Mr. Maestre wrote responses to these RFAs with the assistance of Andrea Johnson, an attorney licensed in the State of North Carolina who is not his counsel of record. (Maestre Dec. at ¶ 34). On July 23, 2018, Ms. Johnson faxed and mailed a copy of the RFA responses to Mr. Anderson at his office. (*Id. at* ¶ 34 and Ex. 10; Johnson Dec. at ¶¶ 1-4).

*Mr. Anderson admitted in a court filing and sworn declaration dated July 27, 2018 that he received Defendant's Response to Plaintiff's Requests for Admissions on July 23, 2018 at 2:42 PDT.* (Doc. 31 at 4; Doc. 31-1 at ¶ 10).

---

[1] Defendants' first attorney withdrew by Court order dated April 30, 2018 for financial reasons. (Doc. 24).

Defendants were represented by counsel, Sonny Thai Tran, for a short period of time starting on September 27, 2018. (Doc. 39). Inexplicably, Mr. Anderson and Mr. Tran entered into a Stipulation filed on February 1, 2019[2] which indicates that Defendants had not responded to the RFAs and/or that Defendants had served RFAs with objections, and that Defendants would supplement their responses. (Doc. 50 at 6). But Defendants had responded to the RFAs months before, and the responses contained no objections. (Ex. 10 to Maestre Dec.; Doc. 31 at 4; Doc. 31-1 at ¶ 10). The responses admit or deny each request and there is nothing to supplement. (*Id.*)[3]

Two weeks later, Mr. Tran moved to withdraw as counsel due at least in part due to an "unreasonable financial burden for [counsel] to continue on when the client, the defendants here, were falling behind on their fees to the law firm." (Chapman Dec. Ex. 3 at 22:1-4).

On February 22, 2019, Plaintiff filed a Motion for Sanctions (Doc.58) claiming that Defendants failed to comply with the Court's order compelling Plaintiff to serve Initial Disclosures and responses to interrogatories and requests for production. (Doc. 58 at 6; Doc.33). *That earlier order (Doc. 33) never mentions responses to the RFAs.* Nevertheless, in the Motion for Sanctions, Plaintiff claims that Defendants failed to serve "any complete or adequate Initial Disclosures" and "any complete or adequate responses to, among other things, "*Plaintiff's First Set of Requests for Admission to Luis Maestre.*" This was false.

The motion for sanctions also states falsely that Defendants "have failed and refused to cooperate in any manner." (Doc.58 at 4). This false statement ignores the fact that Defendants had

---

[2] Mr. Maestre had no knowledge of this stipulation. (Maestre Dec. ¶¶ 37-39).
[3] This Stipulation also indicates that Defendants would supplement responses to: Plaintiff's First Set of Interrogatories to Luis Maestre; Plaintiff's First Set of Requests for Production of Documents to Luis Maestre and Plaintiff's First Set of Interrogatories to Adriana Teran. But Defendants had previously supplemented these responses. (Doc. 41 and Exs. A – D thereto). See also exhibits to Johnson Declaration, attaching all of Defendants' discovery responses.

served responses to the RFAs, as well as initial disclosures and responses to interrogatories and document requests. (Ex. 10 to Maestre Dec.). Plaintiff's counsel previously admitted that under oath. (Doc. 31 at 4; Doc. 31-1 at ¶ 10). Defendants responded to each RFA, fully and completely, without any objections. *Id.* The responses do not appear to be deficient in any way. Nevertheless, Mr. Anderson filed ***a sworn declaration*** supporting the motion for sanctions, falsely stating, in pertinent part: "***Defendants have failed to provide any responses to … Plaintiff's First Set of Request For Admissions…***" (Doc. 58-1, 7).

Neither the motion for sanctions, (Doc. 58), nor the declaration filed in support of that motion (58-1) recites any effort to meet and confer about the motion before it was filed. The failure to meet and confer is grounds to summarily deny the motion pursuant to LCvR 7.1(b).

Four days after Plaintiff filed its motion for sanctions, on February 26, 2019, Defendants' then-current counsel, Mr. Tran, filed a third motion to withdraw as counsel. (Docket 59). Mr. Tran never filed any opposition to the motion for sanctions, even though he still represented Defendants when their response was due (Doc. 71).

On March 13, 2019, Plaintiff filed its motion for summary judgment, in which Plaintiff continued to falsely state that Defendants had not responded to the first set of RFAs. (Doc. 64). The summary judgment brief states that "despite having nearly nine months since service and receipt, Defendant Luis Maestre failed to ***timely*** respond to any of Plaintiffs' Requests for Admissions," (emphasis added) and "consequently, all of Plaintiffs' Requests for Admission . . . are deemed as having been conclusively admitted." (Doc. 64 at 7-8; *see also* Doc. 64 at 15 (citing case law regarding "unanswered requests for admissions")). Mr. Anderson submitted a declaration in support of the summary judgment motion, stating:

> Attached hereto as Exhibit 5 is a true copy of Plaintiff's Requests For Admissions as were served on Defendant Luis Maestre nearly eight months ago, namely on June

15, 2018, and again on their counsel Mr. Tran on October 17, 2019 [sic]. After an Order compelling responses was entered[4], in an unsuccessful attempt to obtain Defendants' discovery compliance, Plaintiff agreed via Stipulation (Doc.50) to allow Defendants additional time to answer, entered February 1, 2019, To date, however, Defendants have failed to participate in discovery and Plaintiff has never received any *timely* responses to the Requests for Admission, which by Rule and Stipulation are now deemed conclusively admitted for all purposes herein.

(Doc. 64-3 at ¶ 7)(emphasis added). Mr. Anderson's artfully worded statements—that Plaintiff "has never received any *timely* responses"— coupled with his failure to disclose that responses were indeed served by these *pro se* defendants five days after the deadline for serving them and his false statement that "Defendants have failed to participate in discovery" clearly imply that Mr. Maestre never provided RFA responses. And Mr. Anderson flatly stated at the hearing on the summary judgment motion, "we never received responses [to] the requests for admissions." (Chapman Dec. Ex. 3 at 11:4-5). After counsel for Defendants disputed this, the Court asked, "Mr. Anderson, have you received any responses to your request to admit?," Mr. Anderson responded, "Not that I'm aware of, Your Honor. I don't have any in my file." (*Id*. at p. 12, lines 6 – 20). Mr. Anderson knew that this statement was false. (Doc. 31 -1, ¶ 10).[5]

### C.    The Court Granted Summary Judgment Based On the Erroneous Belief that Defendant Maestre Never Responded to the RFAs

Relying on Plaintiff's misrepresentations, on May 31, 2019, the Court entered an oral order "strik[ing] Defendant's Answer and Counterclaim (Doc.48) and deem[ing] the facts as stated in Plaintiff's unanswered Requests for Admission to Defendant Luis Maestre (Doc.69-4) [sic] as established." (*See* Docket entry dated May 31, 2019). This was followed by a written Order issued

---

[4] No order compelling responses to the RFAs had been entered.

[5] In February 2019, Plaintiff served by U.S. Mail a document entitled "Second Set of Request for Admissions to Luis Maestre" (the "Second Set of RFAs"). Mr. Maestre wrote responses to the Second Set of RFAs, again with the assistance of Attorney Johnson, and mailed these responses to Mr. Anderson's office on or about March 14, 2019. (Johnson Dec. at ¶ 5). The second set of RFAs relate solely to internet domain names and are irrelevant to plaintiff's motion for summary judgment.

on June 6, 2019 granting summary judgment to Plaintiff.  (Doc. 78).  This order states that "[t]o date, it appears that Defendants have not responded to Plaintiff's Request for Admissions to Luis Maestre" and elsewhere refers to Plaintiff's "unanswered" RFAs.  (*Id.* at 1, 3).  After citing case law in which unanswered RFAs were deemed admitted, the Court stated:  "Accordingly, the Court treats those admissions as a factual basis for summary judgment."  (*Id.* at 2).  The Court adopted Plaintiff's Statement of Uncontroverted Material Facts, based on the purportedly unanswered RFAs, "which the Court deem[ed] as the statement of undisputed material facts in this case," and granted summary judgment.  (*Id.* at 3).  Neither Plaintiff nor its counsel did anything to correct the Court's mistaken belief that Defendants never responded to RFAs.

### D. Defendants' Responses to the RFAs Prevent Summary Judgment for Plaintiff

In response to RFA No. 36, Defendant Maestre said:  "I have been using the name 'La Michoacana' since 2008."  (Ex. 10 to Maestre Dec.)  As explained below, this constitutes a meritorious defense because trademark rights derive from prior, continuous use of the mark.  Plaintiff's counsel knew this but concealed it from the Court to obtain summary judgment.

### E. Other Misconduct by Plaintiff's Counsel

The misrepresentations to the Court that Defendants did not serve responses to the RFAs and the failure to correct the Court's reliance on those misrepresentations that led to summary judgment against Defendants are not the only misconduct by Plaintiff's counsel.  As recounted in the Summary Judgment Order, Mr. Anderson previously misrepresented to the Court that documents received from Defendants "were not responsive to any discovery requests."  (Doc. 78 at 2, n.1).  However, when the Court later examined these documents, it found that ***"[c]ontrary to Plaintiff's representations to the Court, these documents certainly were responsive to discovery requests."***  (*Id.*) (emphasis added).  The Court then deemed these responses timely and admitted them into the record.  (*Id.*).  Yet the Court held that because ***"Defendants still have not responded***

*to Plaintiff's Request for Admissions*, nor have they submitted responses to Plaintiff's pending motions . . . the addition of these documents to the record does not change the Court's analysis regarding summary judgment." (*Id.*) (emphasis added).

**Defendants had responded to the RFAs.** (Doc. 31 at 4; Doc. 31-1 at ¶ 10). **But the Court believed otherwise because of Plaintiff's misrepresentation.** (Doc. 78 at 1, 2-3). And the RFA responses **do** change the outcome on summary judgment because they asserts facts establishing the meritorious defense of priority of use, as Plaintiff's counsel knew.

Further examples of Mr. Anderson's misconduct include intimidations of the *pro se* defendants and disregard for the role of litigation as "the time-honored method of seeking the truth, finding the truth, and doing justice." *Haeger v. Goodyear Tire & Rubber Co.,* 906 F. Supp. 2d 938, 941 (D. Ariz. 2012), *aff'd,* 793 F.3d 1122 (9th Cir. 2015), and *aff'd,* 813 F.3d 1233 (9th Cir. 2016), and *vacated and remanded,* 869 F.3d 707 (9th Cir. 2017). On the morning of May 31, 2018, the day before the hearing on Plaintiff's motion for a preliminary injunction, Mr. Anderson visited the Mochica Peruvian Rotisserie Chicken restaurant owned by the aunt of Defendant Luis Maestre. He demanded to know Mr. Maestre's whereabouts, threatened to burn down Mr. Maestre's restaurant as well as the Mochica Peruvian Rotisserie Chicken restaurant (while the worker whom he was intimidating was inside); he also cursed at and made an obscene gesture to that worker at the counter of the restaurant. (R. Garcia Dec. at ¶¶ 3-7; Mendoza Dec. at ¶¶ 1-7; Chapman Dec. at ¶ 2).

Mr. Anderson also threatened Mr. Maestre with arrest and demanded, at the courthouse before a hearing, that Defendants show him identification, which he photographed. (Maestre Dec. at ¶¶ 31, 47-48). Previously, the U.S. District Court for the District of Columbia entered a restraining order against Mr. Anderson for a similar pattern of misconduct during a trial in 2015.

(Chapman Dec. at ¶ 5; Ex. 1).

Mr. Anderson also failed to appear for a deposition that he noticed for Mr. Maestre. (Maestre Dec. at ¶¶ 40-43).

### F. Defendants' Continuous Use of the "Michoacana" Marks Dates Back to 2008

In June 2008, Defendants first obtained a vendor table at the Sweet Union Flea Market in Monroe, North Carolina selling, among other things, homemade Mexican-style popsicles, known in Spanish as "paletas." (Maestre Decl at ¶¶ 2-3). Mr. Maestre used the trademarks "La Linda Michoacana" and "La Michoacana" in connection with these sales (*Id.* at ¶ 3). "La Linda Michoacana" translates in English to "The Pretty Lady from Michoacán," a state in Mexico known for its paletas. (*Id.* at ¶ 6). Mr. Maestre wanted to use "Michoacana" to attract Mexican-American customers who would recognize the name and its connection to paletas. (*Id.* at ¶ 5). He chose "La Linda Michoacana" as a tribute to his wife, Adriana Teran, who was born in Mexico and had previously worked at a paleta store in Guadalajara, Mexico called "Paleteria La Michoacana." (*Id.* at ¶ 6). "Paleteria" means popsicle shop. (*Id.* at ¶ 4).

The Sweet Union Flea Market is open every weekend day. (*Id.* at ¶ 2). Mr. Maestre has operated his table there selling snow cones and paletas under "La Linda Michoacana" and "La Michoacana" on the weekends, continuously since 2008. (*Id.* at ¶ 14; Arguelles Decl. at ¶ 1-8). Defendants have priority over Plaintiff on the use of "Michoacana" in North Carolina.

### G. Defendants' Prior Continuous Use of the "Indian Girl" Mark Since 2013

Defendant Maestre was aware of the Indian doll design below, which depicts the traditional clothing worn by Purépecha indigenous women in the northwestern region of Michoacán, Mexico:



(Maestre Dec. at ¶ 8) Because Mr. Maestre understood that no one was using this mark in North

Carolina, he believed he was free to use it. (*Id.*). In 2013, he ordered a large banner displaying the words "La Linda Michoacana" and the "Indian girl" design for use at the Sweet Union Flea Market. (*Id.* at ¶¶ 8-9). The banner looks like this:



(*Id.* Ex.1). Defendants have used "Michoacana" and the "Indian Girl" continuously since early 2013. Specifically, Mr. Maestre began using this banner with the "La Linda Michoacana" and "Indian Girl" marks to advertise his paleta goods and services in February or March of 2013. (*Id.* at ¶¶8-9; Declaration of Cesar Torres at ¶ 4). Below is a photograph taken of the banner hanging at Defendants' flea market table on June 16, 2013, which was Father's Day.



(Declaration of Patricia Arguelles at ¶¶ 7-8). On June 7, 2014, Defendants asked a local business, Signs & Stuff, to create a duplicate banner, which was delivered it to Defendant Maestre on or about June 14, 2014. (Declaration of Javier Lopez at ¶¶ 1-6; Ex. 1). Defendants used the replacement banner through February 2018. (Maestre Dec. at ¶ 10).

As their business grew more successful, Defendants began making plans to expand to a brick and mortar shop, and they filed a Certificate of Assumed Name ("La Linda Michoacana") on August 6, 2015 in Cabarrus County, North Carolina. (*Id.* at ¶¶ 12-13). In December 2015, Mr.

Maestre opened his brick and mortar store, "La Michoacana" at 280 Concord Parkway South, Suite 112 at the Village in Concord, North Carolina. (*Id.* at ¶13). He continued to sell paletas at the restaurant under the "La Michoacana" and Indian Girl marks. (*Id.* at ¶¶ 13-18; Ex. 4).

Defendants used the "Indian Girl" along with La Linda Michoacana on the storefront exterior from December 2015 until February 2018, as shown below. (*Id.*).



Defendants also used the "Indian Girl" mark along with the "La Michoacana" mark on the large directory sign at the Village business park from December 2015 to February 2018. (*Id.* at ¶¶ 18-19; Ex. 5-6).

### H. Plaintiff's Use of the "Michoacana" and "Indian Girl" Marks in North Carolina

Plaintiff La Michoacana Natural, LLC is an administratively dissolved North Carolina limited liability company that currently operates three Mexican-style ice cream shops in the Charlotte metropolitan area. (Doc. 64 at 8). Plaintiff does not own or license any federal registration for the Indian Girl mark at issue in this case. Plaintiff obtained a registration for the Indian Girl mark from the State of North Carolina on September 7, 2016:

Plaintiff's 2016 North Carolina registration claims a date of first use of this Indian Girl design in North Carolina of August 1, ***2015***. (Doc. 1-1 at 19, Ex. F). But in the Complaint filed on December 17, 2017, Plaintiff alleges first use in North Carolina in August ***2014***. (Doc. 1 at ¶2). Because both dates are after Defendants' first use of the marks (in 2008 for Michoacana and 2013 for the Indian Girl) Defendants, not Plaintiff, have rights in the mark.

SMRH:4823-6423-9689.2

### III. RELIEF FROM THE SUMMARY JUDGMENT ORDER IS WARRANTED

#### A. Legal Standard

Rule 60(b) of the Federal Rules of Civil Procedure permits relief from a final judgment or order for five specified reasons or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1)-(6); *Murchison v. Astrue*, 466 F. App'x 225, 228-29 (4th Cir. 2012). The disposition of motions made under Rule 60(b) is "largely within the discretion of the trial judge." *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). That discretion "ordinarily should incline toward granting rather than denying relief, especially if no intervening rights have attached in reliance upon the judgment and no actual injustice will ensue." 11 Fed. Prac. & Proc. Civ. § 2857 (3d ed.); *see also Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969) (doubts should be resolved in favor of granting relief so that the case may be heard on the merits).

A party moving for relief under Rule 60(b) "must make a showing of timeliness, a meritorious defense, [and] a lack of unfair prejudice to the opposing party . . ." *Werner v. Carbo*, 731 F.2d 204, 206–07 (4th Cir. 1984). A party must then establish at least one of the six grounds for relief provided for in Rule 60(b): (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) a void judgment; (5) satisfaction, release, or discharge of a judgment; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b)(1)-(6). The Fourth Circuit has recognized, however, that "[t]hese grounds for relief often overlap and it is difficult, if not inappropriate, in many cases to specify or restrict the claim for relief to a particular itemized ground." *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979). Instead, courts are free to "do justice in hard cases where the circumstances generally measure up to one or more of the itemized grounds." *Id.*

Here, relief is warranted under Rules 60(b)(1), for "mistake, inadvertence, surprise, or

excusable neglect" because the Court's Order is based in error; under Rule 60(b)(3), for "misrepresentation, or misconduct by an opposing party" because Plaintiff misled the Court; and under Rule 60(b)(6), for "any other reason that justifies relief," because Defendants have prior common law rights in the marks at issue, rendering the order manifestly unjust.

## B. Defendants Have Met the Threshold Requirements of Rule 60(b)

### 1. Defendants' Motion is Timely

Rule 60(c)(1) provides that "[a] motion under Rule 60(b) must be made within a reasonable time—and … no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). This motion is made well within that time.

### 2. Defendants Have Asserted the Meritorious Defense of Prior Use

The meritorious defense requirement ensures that the granting of relief under Rule 60(b) "will not in the end have been a futile gesture." *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990). "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the [moving] party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). The movant "is not required to establish a meritorious defense by a preponderance of the evidence"; "the mere assertion of facts constituting a meritorious defense in an original complaint" may be sufficient. *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 252 n.8 (4th Cir. 1974).

In this case, Defendants' primary defense is that they began using the "Michoacana" and "Indian Girl" marks in the Charlotte metropolitan area before Plaintiff. (*See* Doc. 48, Defendants' Amended Answer, Affirmative Defenses, and Counterclaim for Common Law Trademark Infringement and Unfair Competition). This is a meritorious defense.

It is a "bedrock" principle of trademark law that "trademark or service mark ownership is not acquired by federal or state registration" but that "ownership rights flow only from prior

appropriation and actual use in the market." *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 356 (6th Cir. 1998) (internal quotation marks omitted). "The first user, then, to appropriate and use a particular mark—the 'senior' user—generally has priority to use the mark to the exclusion of any subsequent—or junior—users. *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 268 (4th Cir. 2003). "And, priority must be established before an injunction can be entered against an infringing trademark user." *Id.*

In this case, Defendants have prior use of the marks at issue in the Charlotte market area and therefore superior trademark rights in that market. As explained above, Defendants began using "La Michoacana" and "La Linda Michoacana" in 2008 and began using the "Indian Girl" mark in 2013. (Maestre Dec. at ¶¶ 2-18). Defendants' use predates Plaintiff's first claimed use of the "Michoacana" and "Indian Girl" marks in North Carolina of August 1, 2014, as alleged in its Complaint, and Plaintiff's claimed first use in North Carolina on August 1, 2015, as stated in Plaintiff's North Carolina trademark registrations. (Doc. 1, Complaint at ¶ 2; Doc. 1-1, Exs. A-I).

Defendants' prior, superior rights are supported by at least the following evidence: (1) The declaration of Luis Maestre, which details the origins of his ice cream and popsicle business under the names "La Linda Michoacana" and "La Michoacana," which he has used continuously at the largest Charlotte metropolitan area flea market since 2008, and his use of the "Indian Girl" mark in connection with this business since 2013, documented by photos of the banner used at the flea market; (2) the declaration of fellow flea market vendor, Alma Garcia, who saw Defendants' continuous use of both "La Michoacana" and "Indian Girl" marks since 2008 and 2013, respectively (Garcia Dec. ¶¶ 4-7); (3) the declaration of Cesar Torres, which states his knowledge of Defendants' use of "La Michoacana" and the "Indian Girl" design since 2013 (Torres Dec. ¶¶ 3-6; (4) the declaration of Patricia Arguelles, Assistant Manager of the Sweet Union Flea market,

and a photograph taken in June 2013, both of which verify that Defendants have been vendors at that market selling snow cones and popsicles under the name "La Michoacana" since 2008, and had used the "Indian Girl" design since at least Father's Day 2013 (Arguelles Dec. ¶¶ 4-8; and (5) the declaration of Javier Lopez, who created a duplicate sign with the marks at issue in 2014. (Lopez Dec. ¶¶ 2-6). This evidence establishes that Defendants have prior rights in the marks that are superior to those of Plaintiff.

Plaintiff claims that it has rights in "La Michoacana" that derive from its licensor, but the court in *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 83 (D.D.C. 2016), *aff'd*, 743 F. App'x 457 (D.C. Cir. 2018) (*PLM*) held otherwise, determining after years of litigation and a 13-day bench trial that Plaintiff's licensor has no recognized trademark rights in "La Michoacana" because its mark is merely descriptive and Prolacto's licensor did not establish secondary meaning. *Id.* The defendant in *PLM* is the licensor of the Plaintiff in this case. Thus, the Plaintiff in this case has no trademark rights in "La Michoacana." *Id*. Mr. Anderson represented both the defendant in *PLM* and the Plaintiff here. Yet, he did not cite the holding of *PLM* in the summary judgment motion to this Court. And, as explained above, Defendants have priority of continuous use in North Carolina and therefore superior rights, in North Carolina.[6]

---

[6] Plaintiff's purported state registrations also do not affect Defendants' priority-based rights. Defendants began using their "Michoacana" mark in 2008 and their "Indian Girl" mark in 2013, before Plaintiff's claimed first uses on August 1, 2015 as stated in its registrations. (Doc. 1-1, Exs. A-I). As with federal trademark registration, state registration does not cut off the preexisting common law rights of others. *See* N.C. Gen. Stat. § 80-13 ("Nothing herein shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law.); § 80-1.1 ("The construction given the federal act should be examined as persuasive authority for interpreting and construing this Article"). Defendants' preexisting common law rights to use the "Michoacana" and "Indian Girl" marks are unaffected by Plaintiff's state registrations. Defendants have therefore established the existence of a meritorious defense of priority of use.

Since Plaintiff's licensor has no rights in the "La Michoacana" mark, what remains at issue is the use of the "Indian Girl" mark. Plaintiff does not own or license a federal registration for the "Indian Girl" mark, and thus has no prior nationwide right to its use. Under the Lanham Act, 15 U.S.C. § 1057, registration confers a right of priority, nationwide in effect from the date of application. Plaintiff's use of the "Indian Girl" image could instead be based only on common law rights, if any, which are limited to its geographic area of use. Here, Defendants' use of the Indian Girl in connection with the sale of frozen treats predates Plaintiff's use in North Carolina. (Maestre Dec. at ¶¶ 2-18; Doc. 1, Compl. ¶ 2 and Doc. 1-1, Exs. A-I). Therefore, Defendants have trademark rights in this mark, but Plaintiff does not. *See Allard*, *supra*, 146 F.3d at 356.

### 3. Plaintiff Will Not Suffer Unfair Prejudice

There is no unfair prejudice here. Unfair prejudice cannot be based on the "prejudice" that occurs when any summary judgment order is vacated, such as the protraction of proceedings or the time and expense of going to trial. *See Werner*, 731 F.2d at 207. Nor can a plaintiff be prejudiced by the loss of a judgment in its favor to which it is not legally entitled. *Compton*, 608 F.2d at 103.

Defendants have proffered evidence of priority of use and evidence that shows they submitted responses to Plaintiff's RFAs. Therefore, Plaintiff is not entitled to an order granting summary judgment in its favor. Moreover, as detailed below, Plaintiff was aware of Defendants' factual allegations concerning prior use and repeatedly made efforts to conceal Defendants' discovery responses from the Court. (*See, e.g.*, Doc. 41, Defendants' Opposition to Plaintiff's Motion for Sanctions, and Exhibits A-D thereto (attaching Defendants' supplemental discovery responses and initial disclosures); Doc. 45 at 6, Defendants' Reply to Defendants' Motion to Amend Answer to Add Counterclaims (stating that "Plaintiff, apparently, refuses to acknowledge the fact that Defendants have served responses including supplemental responses to each of

Plaintiff's discovery requests.")). There is no unfair prejudice, as these facts show.

### C.    Relief is Warranted Under Rule 60(b)(3)

A party seeking relief under Rule 60(b)(3) must (1) prove the misconduct complained of by clear and convincing evidence and (2) demonstrate that such misconduct prevented the moving party from fully and fairly presenting its case. *Square Const. Co. v. Wash. Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981). Under this provision, "'[m]isconduct' does not demand proof of nefarious intent or purpose as a prerequisite to redress . . . The term can cover even *accidental* omissions." *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 818 F.3d 1320, 1328 (Fed. Cir. 2016) (emphasis in original).

The evidence set forth above is clear and convincing that Plaintiff repeatedly misled the Court about the RFA responses, resulting in a summary judgment decision that is not only unfair, but also factually and legally erroneous.[7] The "policy of deterring misconduct which threatens the fairness and integrity of the fact finding process must outweigh considerations of finality." *Square Const.*, 657 F.2d at 72. Accordingly, relief from the Court's summary judgment order is warranted.

### D.    Relief Is Warranted Under Rule 60(b)(1)

---

[7] Although the RFA responses were served five days after they were due, it is not a foregone conclusion that untimely RFA responses would be deemed admitted, particularly against a *pro se* litigant. "While Rule 36 provides that a request for admission is admitted if a party fails to timely serve a written answer or objection to it, a court has discretion to find such a request not to be admitted, which may be especially warranted in cases involving pro se litigants." *Aramark Unif. & Career Apparel, LLC v. Hernandez*, No. 7:16-CV-336-BR, 2018 WL 651336, at *3 (E.D.N.C. Jan. 31, 2018) (declining to deem the admission requests admitted). *See also McLean v. Miller*, No. 1:16CV991, 2018 WL 3014827, at *4 (M.D.N.C. June 15, 2018), *report and recommendation adopted*, No. 1:16CV991, 2018 WL 3581713 (M.D.N.C. July 25, 2018) ("[C]ourts have hesitated to deem requests for admission admitted against *pro se* plaintiffs when the admissions ask the plaintiff to concede essential elements of his or her claim or facts that are obviously in dispute."); *Simmons-Blount v. Guilford Cty. Bd. of Educ.*, No. 1:06-CV-944, 2009 WL 962266, at *4 (M.D.N.C. 7 Apr. 2009) (same); *In re Savage*, 303 B.R. 766, 773 (Bankr. D. Md. 2003) ("Federal Rule of Civil Procedure 36 was not intended to be used as a technical weapon to defeat the rights of *pro se* litigants to have their cases fairly judged on the merits.").

A Court's substantive error of fact provides grounds for relief under Rule 60(b)(1). Based on Mr. Anderson's misrepresentations, the Court erroneously believed that Defendants never submitted responses to Plaintiff's RFAs. (Doc. 78 at 1). As a result, the Court deemed the RFAs admitted and granted summary judgment in favor of Plaintiff based on these admissions. (*Id.*) This factual error had significant impact, rendering the Court's order inaccurate.

For instance, based on the RFAs, Plaintiff contended in its motion for summary judgment that "LA MICHOACANA is arbitrary and non-descriptive and Plaintiff's Indian girl doll design is unique and distinctive as to the Plaintiff's services." (Doc. 64 at 20). There is no support for this statement in either the facts or the law. Instead, it directly contradicts the detailed and well-supported finding by the U.S. District Court for the District of Columbia that "La Michoacana" is descriptive and Plaintiff's licensor failed to prove the required element of secondary meaning in order for it to have trademark rights in the "La Michoacana" mark. *PLM*, 188 F. Supp. 3d at 86. It also contradicts that court's finding that use of the "Indian Girl" design by Plaintiff's licensor, Prolacto, constitutes infringement of a third party's registered, incontestable trademarks featuring the "Indian Girl" design. *Id.* at 107.

Nevertheless, based on its adoption of Plaintiff's contentions, this Court's summary judgment order holds that Defendants have "infringed upon Plaintiff's and PROLACTO's prior, valid, registered, and exclusive trademarks and service mark rights in the strong, arbitrary and famous LA MICHOACANA Marks." (Doc. 78 at 11). The Court's findings are taken from RFAs, which the Court deemed unanswered and thus admitted. But the record shows that Defendants did respond to Plaintiff's RFAs, and denied those that formed the basis for summary judgment (Maestre Dec. at ¶ 34). Therefore, the Court should not permit this error to stand, and should vacate its summary judgment order.

### E. Relief Is Warranted Under Rule 60(b)(6)

Rule 60(b)(6) permits a court to relieve a party from a final judgment or order for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6); *Klapprott v. United States*, 335 U.S. 601, 615 (1949); *see also Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 266 (4th Cir. 1993) (describing Rule 60(b)(6) as a "grand reservoir of equitable power to do justice in a particular case"). Although described as a catch-all provision, *see Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (en banc), "a motion under Rule 60(b)(6) may not be granted absent extraordinary circumstances," *Reid v. Angelone*, 369 F.3d 363, 370 (4th Cir. 2004) (internal quotation marks omitted) (*abrogated on other grounds by United States v. McRae*, 793 F.3d 392 (4th Cir. 2015)). "[E]xtraordinary circumstances [are those] that create a substantial danger that the underlying judgment was unjust." *Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir. 1986).

The Court granted summary judgment in favor of Plaintiff based on Plaintiff's assertions that (1) Defendant Luis Maestre failed to respond to Plaintiff's RFAs and (2) Plaintiff was the prior user. There is ample evidence that these assertions are incorrect, as detailed above. Under analogous circumstances, the court in *Murchison v. Astrue* found that the district court's grant of summary judgment based in error was unjust and constituted "extraordinary circumstances" warranting relief under Rule 60(b)(6). 466 F. App'x at 230. The same result should follow here.

## IV. SUMMARY JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS AND THE PRELIMINARY INJUNCTION SHOULD BE DISSOLVED

Rule 56(f) permits the Court to enter summary judgment for Defendants. As explained above, trademark rights derive from priority of use. Defendants' use of the "La Michoacana" and "Indian Girl" marks pre-dates Plaintiff's use, as shown by abundant evidence presented by Defendants *and by Plaintiff's evidence of its own first use*. Thus, summary judgment should be granted in favor of Defendants.

For the same reasons, preliminary injunction should be dissolved. "A preliminary injunction may be modified where warranted by a change in the law or circumstances." *Telesis Cmty. Credit Union v. Mantiff 1215 Statesville Hosp., LLC*, at *1 (W.D.N.C. Mar. 5, 2010) (citing Fed. R. Civ. P. 60(b)). Here, ample evidence shows Defendants, are the senior users of the marks, contrary to Plaintiff's allegations on which the preliminary injunction was based. Thus, Plaintiff is no longer likely to succeed on the merits, which is a change in circumstances warranting dissolution of the preliminary injunctions. Moreover, the same grounds for vacating a final judgment under Rule 60(b) are grounds under which "the court may relieve a party or its legal representative from a[n] … order." Fed. R. Civ. P. 60(b). Thus, the reasons previously stated for overturning the Summary Judgment Order also counsel dissolution of the Preliminary Injunction.

## V.    MR. ANDERSON'S PRO HAC VICE ADMISSION SHOULD BE REVOKED

### A.    Mr. Anderson Was Not Candid With the Court

The North Carolina Rules of Professional Conduct provide that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." N.C. Rev. R. Prof. Conduct 3.3, Candor Toward the Tribunal (2019). Misrepresentations to the court are grounds for revocation of *pro hac vice* admission. *Ryan v. Astra Tech, Inc.*, 772 F.3d 50, 63 (1st Cir. 2014) (affirming order revoking *pro hac vice* admission where attorney "falsified evidence and lied point blank with premeditation to the court"). This alone is misconduct under N.C. Rules of Professional Conduct 3.3.

Mr. Anderson has demonstrated a lack of candor toward the Court. He knew Mr. Maestre had served RFA responses but said he did not and sought sanctions against Defendants based, in part, on "Defendants' repeated and continued failure to serve any complete or adequate responses to . . . Plaintiff's First Set of Requests for Admission [sic] to Luis Maestre." (Doc. 58 at 1). The

Motion for Sanctions makes no mention of Mr. Maestre's July 23, 2018 RFA responses and suggests that no responses were ever received. (*See*, *Id*. at 2 (referring to Defendants' "failure to serve *any*" responses (emphasis added)); *Id*. at 7 (referring to Mr. Maestre's "deemed Admissions, resulting from his failure to file ***any*** *timely response* to Plaintiff's First Set of Request For Admissions" (emphasis added)); *Id*. at 8 (calling for Defendants to serve "full and complete responses" to Plaintiff's First Set of Request for Admissions by February 21, 2019)). And the declaration he filed in support of the sanctions motion states, falsely, that "as of the present date, Defendants have failed to provide any responses to … Plaintiff's First Set of Request For Admissions." (Doc. 58-1, 7). This statement was flatly untrue and directly contradicted the declaration he filed with the Court on July 27, 2018. (Doc. 31-1 at ¶ 10).

Further, in a declaration submitted in support of Plaintiff's Motion for Summary Judgment, filed on March 13, 2019, Mr. Anderson states that "To date . . . Defendants have failed to participate in discovery, and Plaintiff has never received any timely responses to the Requests for Admissions, which by Rule and Stipulation are now deemed conclusively admitted for all purposes herein." (Doc. 64-3). The RFAs are attached as well (Doc. 64-9), but the responses served on July 23, 2018 are never included or mentioned. Mr. Anderson's artful language—that Plaintiff "has never received any ***timely*** responses"—and his omission of the responses received implies that Mr. Maestre never provided RFA responses.

The false impression created by Mr. Anderson infects the Court's subsequent rulings with error. On May 31, 2019, the Court entered an oral order granting Plaintiff's Motion for Sanctions: "ORAL ORDER that for the reasons stated in open Court, Plaintiff's <u>58</u> Motion for Sanctions is GRANTED. The Court hereby strikes Defendant's Answer and Counterclaim (Doc. No. 48) and deems the facts as stated in Plaintiff's ***unanswered*** Requests for Admission to Defendant Luis

Maestre (Doc. No. 69-4) as established. SO ORDERED." (emphasis added).

Further, the Court's June 6, 2019 Summary Judgment Order (Doc. 78) inaccurately surmises: "*To date, it appears that Defendants have not responded to Plaintiff's Request for Admissions to Luis Maestre*," citing the RFAs attached to Plaintiff's Motion for Summary Judgment. (Doc. 64-9) (emphasis added). As a result, the Court "treat[ed] those admissions as a factual basis for summary judgment," citing case law in which courts deemed such admissions sufficient to support summary judgment. (Doc. 78 at 2). Plaintiff's Statement of Uncontroverted Material Facts in support of its Motion for Summary Judgment was "based on Plaintiff's [purportedly] unanswered Request for Admission to Defendant Luis Maestre," which the Court then adopted as factual findings. (Doc. 78 at 3).

*Mr. Anderson never corrected the Court's misunderstanding and allowed judgment to be awarded in Plaintiff's favor based on this error*. Comments to Rule 3.3 state, "Having offered material evidence in the belief that it was true, a lawyer may subsequently come to know that the evidence is false. … In such [a] situation … the lawyer must take reasonable remedial measures … seasonabl[y]…the lawyer must act before a third party relies to his or her detriment upon the false testimony or evidence … [and] correct… the false statements or evidence." Mr. Anderson failed to do this, resulting in a purposeful miscarriage of justice against *pro se* litigants. Revocation of Mr. Anderson's *pro hac vice* admission is therefore warranted.

### B.     Mr. Anderson Abused the Discovery Process

Mr. Anderson abused the discovery process by misrepresenting facts about the RFA responses. This Court has inherent authority "to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 57 (1991); *see also Cargill, Inc. v. WDS, Inc.*, No. 316CV00848FDWDSC, 2018 WL 3614040, at *10 (W.D.N.C. July 27, 2018). The Supreme Court of North Carolina has recognized that a court's authority to revoke

*pro hac vice* status "is not limited by the rules of the State Bar" because courts possess inherent authority to discipline attorneys. *See Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 182 (2010); *see also Lendus, LLC v. Goede*, No. CV 2018-0233-SG, 2018 WL 6498674, at *1 (Del. Ch. Dec. 10, 2018) ("Rules of Professional Conduct constitute the limits of behavior, and are not practice guidelines. The norms of civility and candor . . . are essential to the administration of justice . . . [and] the courts must enforce them because they are indispensable to our ability to perform the core functions of a justice system.").

### C.     Mr. Anderson Harassed, Threatened, Bullied and Intimidated Individuals

Under the North Carolina Rules of Professional Conduct, it is "professional misconduct" for a lawyer to "engage in conduct that is prejudicial to the administration of justice." N.C. Rev. R. Prof. Conduct 8.4(d) (2019). "Threats, bullying, harassment, and other conduct serving no substantial purpose other than to intimidate, humiliate, or embarrass anyone associated with the judicial process including . . . litigants [and] witnesses . . . violate the prohibition on conduct prejudicial to the administration of justice." *Id.*, Cmt. 5. Additionally under Rule 4.4, a lawyer must respect the rights of third persons and "shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." N.C. Rev. R. Prof. Conduct 4.4(a). Comment 2 to Rule 4.4 specifically calls out "[t]hreats, bullying, harassment, insults, slurs, personal attacks, [and] unfounded personal accusations" as examples of conduct that violates the rule.

Here, there is ample evidence that Mr. Anderson has engaged in harassing and menacing conduct, threatening people associated with Mr. Maestre on May 31, 2018, referencing the instant lawsuit, cursing at them, making obscene gestures to them, and threatening to burn down the store where a worker was standing, frightening her and causing her to call the police and quit her job. These are grounds for revocation of *pro hac vice* status. *Estate of Williams v. Radford*, No. 1:18-

cv-00182-MR-WCM, 2018 WL 6065423, at *2 (W.D.N.C. Nov. 20, 2018). This same evidence warrants the issuance of an order prohibiting Mr. Anderson from contacting or going near people or premises affiliated with the Defendants.

## VI.    SANCTIONS ARE ALSO WARRANTED

FRCP 56(h) permits a fee award, an order of contempt, "or other appropriate sanctions" when a declaration is submitted in bad faith. "Bad faith" is not defined, but "ordinarily involves a dishonesty of belief or purpose, Black's Law Dictionary 149 (8th ed.2004), or 'where a claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper purpose.'" *Bowers v. Univ. of Virginia*, No. CIV. A. 3:06CV00041, 2008 WL 2346033, at *4 (W.D. Va. June 6, 2008). "A court has wide discretion in deciding what constitutes 'bad faith'' *Horton v. Dobbs*, No. 1:09CV114, 2011 WL 1899760, at *2 (N.D.W. Va. May 19, 2011). The court in *Satterfield v. City of Chesapeake, Virginia*, No. 2:16-CV-665, 2019 WL 5280969, at *11 (E.D. Va. Jan. 16, 2019) found bad faith and awarded sanctions for the submission of a declaration on summary judgment that conflicted with facts the declarant had testified to at a prior deposition. *See also Rogers v. AC Humko Corp.*, 56 F. Supp. 2d 972, 981 (W.D. Tenn. 1999).

There is ample evidence of bad faith here. Mr. Anderson previously swore that he received the responses to the RFAs, (Doc. 31-1 at ¶ 10), then swore he did not (Doc. 64-3).

Similarly, 28 U.S.C. § 1927 states, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

And "[u]nder its inherent powers, a district court may .. award sanctions in the form of attorneys' fees against a party or counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Haeger,* 869 F.3d at 973. *See also Chambers*, 501 U.S. at 40, 42 (upholding

an award of almost a million dollars, representing "the entire amount of [the] litigation costs paid [by the moving party] to its attorneys" for "misleading and lying to the Court.").

Evidence of bad faith is amply demonstrated here, as Mr. Anderson made material misrepresentations to the Court and harassed and intimidated Defendants and people affiliated with them.

Defendants respectfully request that the Court issue an order to Plaintiff and its counsel, Mr. Anderson, requiring them, jointly and severally, to pay the reasonable costs and attorney's fees incurred in preparing and filing the instant motion and its supporting documents. *See Intellect Wireless, Inc. v. HTC Corp.*, 910 F. Supp. 2d 1056 (N.D. Ill. 2012), *affirmed*, 732 F.3d 1339 (Fed. Cir. 2013) (fee award joint and several against the party and its outside counsel).

## VII. <u>CONCLUSION</u>

Defendants respectfully request that the Court grant each element of relief requested above. Defendants' counsel believe a hearing may be helpful.

Respectfully submitted this 21st day of November, 2019.

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

*s/ Laura L. Chapman*
_____

Laura L. Chapman (admitted *pro hac vice*)
lchapman@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: (415) 434-9100

BRADLEY ARANT BOULT CUMMINGS LLP
Corby C. Anderson (N.C. Bar No. 20829)
canderson@bradley.com
Matthew S. DeAntonio (N.C. Bar No. 39625)
mdeantonio@bradley.com
214 N. Tryon Street, Suite 3700
Charlotte, North Carolina 28202
Telephone: (704) 338-6043

*Counsel for Defendants Luis Maestre, d/b/a La Michoacana and/
or La Linda Michoacana; Adriana Teran d/b/a La Michoacana
and/or La Linda Michoacana; and La Linda Michoacana*

## CERTIFICATE OF SERVICE

I certify that on November 21, 2019, I served the foregoing BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR RELIEF FROM SUMMARY JUDGMENT ORDER (DOC. 78); TO VACATE THE ORAL ORDER STRIKING DEFENDANTS' ANSWER AND COUNTERCLAIM (DOC. 48); FOR SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS AND DISSOLUTION OF THE PRELIMINARY INJUNCTION (DOC. 30); TO REVOKE THE PRO HAC VICE ADMISSION OF STEPHEN ANDERSON (DOC. 5); AND FOR MONETARY SANCTIONS CONSISTING OF ATTORNEYS' FEES AND COSTS on all parties of record as follows:

Via Electronic Filing
Stephen L. Anderson (attorneys@brandxperts.com)
Albert P. Allan (alallan@allaniplitigation.com)
*Counsel for Plaintiff*

s/ Laura L. Chapman
Laura L. Chapman
