LA MICHOACANA NATURAL, LLC, )
)
Plaintiff, )
)
v. )
) **ORDER**
LUIS MAESTRE, d/b/a La Michoacana )
and/or La Linda Michoacana, ADRIANA )
TERAN, d/b/a La Michoacana and/or La )
Linda Michoacana, and LA MICHOACANA, )
)
Defendants. )

**THIS MATTER** comes before the Court on Defendants' request to revoke the pro hac vice admission of Plaintiff's counsel Stephen L. Anderson, (Doc. No. 106),[1] and on its own motion.

## I. OVERVIEW

This is a trademark infringement case between Plaintiff La Michoacana Natural, LLC and Defendants Luis Maestre, Adriana Teran, and La Michoacana. Maestre's and Teran's primary language is Spanish, and at critical junctures in this litigation they proceeded pro se. As discussed more fully below, Anderson took advantage of Defendants' pro se status. More importantly for purposes of this motion, Anderson misled the Court to believe that Maestre never responded to Plaintiff's

---

[1] Defendants' motion seeks other relief in addition to revocation of Anderson's pro hac vice admission. Due to the egregiousness of Anderson's misconduct, the Court elects to rule on Anderson's pro hac vice status immediately. The Court will resolve the remainder of Defendants' motion in a separate order.

requests for admission and procured judgment in Plaintiff's favor on that falsehood, made misrepresentations to the Court regarding the contents of a package he received from Defendants, and engaged in unprofessional conduct towards third parties and Defendants. For these reasons, the Court deems Anderson's pro hac vice admission revoked.

## II.  BACKGROUND

Plaintiff filed its Complaint on December 19, 2017. (Doc. No. 1.) That same day, Anderson was admitted pro hac vice to represent Plaintiff in this matter. (Doc. No. 5.)

On April 23, 2018, Plaintiff moved for a preliminary injunction. (Doc. No. 22.) Defendants were proceeding pro se at the time and did not file a response to Plaintiff's motion. The Court scheduled a hearing on the motion for June 1, 2018.

On May 31, 2018—the day before the hearing on Plaintiff's motion for a preliminary injunction—Anderson went to Mochica, a restaurant owned and operated by Maestre's aunt located in the same shopping center as Maestre's restaurant at issue in this litigation. (Doc. No. 112, ¶ 3; Doc. No. 117, ¶¶ 1–2.) Rebecca Garcia, a Mochica employee, was at the restaurant when Anderson arrived. (Doc. No. 112, ¶¶ 2–3.) There is a dispute as to what was said at the restaurant. According to Garcia's declaration, Anderson asked for "Luis" and she responded that she did not know which Luis he was referring to. (Doc. No. 112, ¶ 3.) Garcia states that Anderson then called her a "fucking liar" and threatened to burn the restaurant down with her in it. (Doc. No. 112, ¶ 6.) Conversely, Anderson states that he was

supposed to meet with Maestre that morning and when he tried to get information from Garcia as to where Maestre was, Garcia started yelling at him and asked him to leave, at which point he said "I will be back and you can tell [Maestre] that hiding from me won't help him."  (Doc. No. 122-2, ¶ 18.)  Anderson denies threatening to burn the restaurant down.[2]

Notwithstanding the dispute as to what was said, it is indisputable that Anderson approached Garcia at the counter and gave her the middle finger, see the date- and time-stamped image below:



(Doc. No. 112, ¶ 4.)  Garcia reported the incident to the police that same day and immediately quit her job at Mochica.  (Doc. No. 112, ¶¶ 8–9; Doc. No. 109-4.)

---

[2] The Court elects not to resolve this factual dispute notwithstanding the circumstances that strongly corroborate Garcia's claim of intimidation, including that she immediately quit her job,  the incident was reported to the police, and Anderson's pattern of disrespect demonstrated repeatedly in court, such as his habit of calling people liars—"fucking liar" according to Garcia, and "blatant liar" in court. (Mar. 3, 2020 Hearing Transcript ["Tr."] 39:14–15.) The insulting gesture by an attorney to a potential witness is enough.

The Court held a hearing on Plaintiff's motion for a preliminary injunction the next day. Either before or after the hearing,[3] Anderson stopped Maestre and Teran in the hallway, demanded that they provide him with identification, and used his phone to take photographs of their driver's licenses. (Doc. No. 116, ¶ 31; Tr. 53:9–54:3.)

On June 15, 2018, Anderson served Plaintiff's first requests for admission on Maestre by mail. (Doc. No. 64-9, at 1–13.) Maestre's responses to the RFAs were due on July 18, 2018. Maestre was still proceeding pro se at the time; however, an attorney named Andrea Johnson assisted Maestre in responding to the RFAs. (Doc. No. 113, ¶ 2.) On July 23, 2018, five days after the deadline, Johnson faxed Maestre's RFA responses to Anderson. (Doc. No. 113, ¶¶ 2–3; Doc. No. 116, ¶¶ 32–34; Doc. No. 122-5.) Anderson received the fax that same day. (Doc. No. 31-1, ¶ 10; Doc. No. 113, ¶¶ 2–3; Doc. No. 122-5.)

On September 27, 2018, Sonny Tran filed a notice of appearance on behalf of Defendants. (Doc. No. 39.) On October 17, 2018, Anderson served Plaintiff's first RFAs on Tran—even though Anderson had received Maestre's responses to the RFAs approximately three months earlier. (Doc. No. 64-3, ¶ 7.)

On February 1, 2019, Anderson filed a "Stipulation RE: Discovery Matters and Scheduling" signed by him and Tran. (Doc. No. 50.) The Stipulation omits that Maestre sent his RFA responses to Anderson on July 23, 2018. Instead, the

---

[3] Maestre states that this incident occurred before the hearing, and Anderson states that it occurred after the hearing. (Doc. No. 116, ¶ 31; Tr. 25:24–26:10, 53:9–54:3, 54:22–55:3.) The Court makes no finding on the timing of the interaction.

Stipulation states that "Defendants have requested Plaintiff to agree that Defendant Luis Maestre be relieved from his deemed Admissions, resulting from his failure to file any timely response to Plaintiff's [first RFAs] despite that Responses were due since July 18, 2018." (Doc. No. 50, at 5.) The Stipulation further states that on or before February 21, 2019, Defendants shall serve Plaintiff's attorneys with full and complete responses to Plaintiff's first set of discovery requests, including Plaintiff's RFAs, "as previously compelled by this Court." (Doc. No. 50, at 6.) Contrary to this statement, the Court had not compelled Defendants to respond to Plaintiff's first RFAs. In fact, Plaintiff did not even move to compel responses to its RFAs. Instead, Plaintiff moved to compel initial disclosures and responses to its requests for production and interrogatories, (Doc. No. 31), and the Magistrate Judge entered an order compelling only initial disclosures and responses to Plaintiff's first requests for production and interrogatories,[4] (Doc. No. 33). The Stipulation provides that if "Defendants strictly comply with the aforementioned terms, Defendant Luis Maestre shall be relieved from his deemed Admissions." (Doc. No. 50, at 6.) Tran moved to withdraw as counsel for Defendants shortly thereafter on February 15, 2019. (Doc. No. 53.)

On February 22, 2019, Anderson filed a motion for sanctions grounded in part on "Defendants' repeated and continued failure to serve any complete or adequate responses to" Plaintiff's RFAs. (Doc. No. 58.) Anderson also filed a supporting

---

[4] During the hearing on Defendants' omnibus motion, Anderson again falsely stated to the Court that the Magistrate Judge ordered Defendants to respond to Plaintiff's first RFAs. (Tr. 18:2–15, 28:7–8.)

5

declaration that falsely states "as of the present date, Defendants have failed to provide any responses to" Plaintiff's RFAs. (Doc. No. 58-1, ¶ 5.) As stated above, Maestre sent his responses to Plaintiff's RFAs on July 23, 2018. (Doc. No. 31-1, ¶ 10; Doc. No. 113, ¶¶ 2–3; Doc. No. 116, ¶¶ 32–34; Doc. No. 122-5.)

On March 13, 2019, Anderson filed a motion for summary judgment grounded entirely on Maestre's purported failure to serve any responses to Plaintiff's RFAs. (Doc. No. 64.) Anderson also filed a supporting declaration that falsely states an order compelling responses to the RFAs had been entered. (Doc. No. 64-3, ¶ 7.) Further, Anderson's declaration misleadingly states that "Plaintiff has never received any timely responses to the RFAs." (Doc. No. 64-3, ¶ 7.) This misleading statement is reiterated in Plaintiff's brief in support of its summary judgment motion. (Doc. No. 64, at 2–3.) Although Tran was still listed as counsel of record for Defendants at the time of Plaintiff's summary judgment motion, Tran filed motions to withdraw on February 15, 2019, February 20, 2019, and February 26, 2019, and Defendants did not file a response to Plaintiff's summary judgment motion. (Doc. Nos. 53, 56, & 59.)

The Court held a hearing on Plaintiff's motion for summary judgment and Tran's third motion to withdraw on May 31, 2019. During the hearing, the Court inquired of Anderson as to the discovery responses he had received from Defendants. In response, Anderson stated:

> I understand that sometime in April of this year a FedEx package came in from Mr. Maestre. However, frankly, I did not even open it or look at it because we already had motions for summary judgment pending, several orders that they respond to the motion to withdraw and, frankly,

we couldn't take a deposition at that point so there really wasn't any point in reading it.

(Doc. No. 109-3, at 14:13–20.) After the Court questioned Anderson regarding his failure to look at information and documents sent to him by a defendant in this case, Anderson changed his story: "I did go through it. . . . I didn't say that I didn't read it." (Doc. No. 109-3, at 15:16, 16:13–14.) This comment is patently false. Anderson's exact words that he denies saying are "I did not even open it or look at it . . . ." (Doc. No. 109-3, at 14:15–16.) Anderson went on:

> It's just – it didn't make sense. They weren't responsive. They were a group of documents, some were papers, some were pictures, but they did not correspond to any discovery requests. There was [sic] no titles or covers or Bates stamps. It was just a stack of paper that frankly I couldn't make heads or tails of what it was supposed to be. . . . All I know is I got a package of paper in a FedEx envelope that was not complying with the court order that we've been waiting for. . . . When Pro Person sends me a stack of paper, half of it was like phone book ads and things. It was just no value in this case. . . . I think we even had trouble identifying what file it went to. . . . There really wasn't anything in there that was pertaining to this – it wasn't a response to any motion. It wasn't a response to discovery, and it certainly wasn't a response to [RFAs] that had been outstanding since June of 2017 [sic].

(Doc. No. 109-3, at 16:13–18:1.) The Court directed Anderson to file the contents of the package with the Court. The Court reviewed the documents, (Doc. No. 77-1), and found that, contrary to Anderson's representations, the documents included Maestre's responses to Plaintiff's second requests for production and interrogatories and certainly were responsive to discovery requests.

During the summary judgment hearing, Anderson also falsely stated to the Court that he never received responses to Plaintiff's first RFAs. (Doc. No. 109-3, at 11:4–5.) The Court then asked Tran where there was an indication on the docket

that the RFAs had been responded to "in any way." (Doc. No. 109-3, at 12:3–5.) Tran responded:

> Your Honor, I don't see it on the docket. But I do see, I guess, in our file that there was a response to the [RFAs]. I'm just not certain – I can't confirm right now how and when it was submitted. But there were some responses to their [RFAs], and I have a couple of copies here to see maybe before I got involved if Mr. Anderson's team has received these responses to their RFAs.

(Doc. No. 109-3, at 12:3–13.) The Court then turned to Anderson and asked: "Mr. Anderson, have you received any responses to your [RFAs]?" (Doc. No. 109-3, at 12:14–15.) Anderson replied: "Not that I'm aware of, Your Honor. I don't have any in my file." (Doc. No. 109-3, at 12:16–17.) Based on Defendants' purported failure to respond to Plaintiff's first RFAs—as represented by Anderson—the Court struck Defendants' amended answer and counterclaim and deemed Plaintiff's RFAs as admitted. The Court issued an order on Plaintiff's summary judgment motion on June 6, 2019. The order states that "Defendants still have not responded to Plaintiff's [RFAs]" and grants summary judgment in favor of Plaintiff based solely on the "unanswered" RFAs that the Court had deemed admitted. (Doc. No. 78, at 1–3.)

The Court granted Tran's third motion to withdraw during the summary judgment hearing, and in November 2019, Defendants retained new counsel who filed an omnibus motion for relief. (Doc. No. 106.) Plaintiff filed a response and evidentiary materials in opposition to the motion. (Doc. Nos. 122 to 122-7 & 123.) The Court held a hearing on Defendants' omnibus motion on March 3, 2020. This order is limited to the motion's request to revoke Anderson's pro hac vice admission. The Court will address the remainder of the motion by separate order.

## III.  DISCUSSION

Pro hac vice admission is a privilege, not a right.  Ramirez v. England, 320 F. Supp. 2d 368, 374 (D. Md. 2004) (citing Thomas v. Cassidy, 249 F.2d 91 (4th Cir. 1957)).  It comes with duties, duties of candor and professionalism.  The admission of an attorney pro hac vice is within the Court's discretion, A1 Procurement, LLC v. Thermcor, Inc., No. 2:15-cv-15, 2015 U.S. Dist. LEXIS 174898, at *12 (E.D. Va. Nov. 18, 2015); Local Civil Rule 83.1(c)(1), and the Court may revoke an attorney's pro hac vice admission at any time, Estate of Williams v. Kelly, No. 1:18-cv-00182, 2018 U.S. Dist. LEXIS 197756, at *4 (W.D.N.C. Nov. 20, 2018); Local Civil Rule 83.2(c). "Grounds for revocation include violations of the North Carolina Rules of Professional Conduct or any law or regulation, fraud, misrepresentation, lack of candor with the Court or other misconduct."  Estate of Williams, 2018 U.S. Dist. LEXIS 197756, at *4; see also A1 Procurement, 2015 U.S. Dist. LEXIS 174898, at *14 ("Specific grounds for revocation can include unprofessional conduct, violation of the local rules, and a wide variety of ethics violations.").  Moreover, "even if there is not one bold ground to revoke an attorney's pro hac vice admission, the Court has the discretion to revoke an attorney's pro hac vice status based on the combined effect of an attorney's misconduct and disregard for the Local Rules."  A1 Procurement, 2015 U.S. Dist. LEXIS 174898, at *16.

Here, Anderson's pattern and practice of deception—misrepresentations regarding the RFAs, misrepresentations regarding the FedEx package, and

unprofessional conduct surrounding the preliminary injunction hearing warrant

revocation of his pro hac vice admission. The Fourth Circuit's discussion of a lawyer's

general duty of candor is particularly helpful in assessing Anderson's

misrepresentations to this Court:

> Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice. . . . Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process. As soon as the process falters in that respect, the people are then justified in abandoning support for the system in favor of one where honesty is preeminent.
>
> While no one would want to disagree with these generalities about the obvious, it is important to reaffirm, on a general basis, the principle that lawyers, who serve as officers of the court, have the first line task of assuring the integrity of the process. . . . The system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end.

United States v. Shaffer Equip. Co., 11 F.3d 450, 457–58 (4th Cir. 1993).

The evidence is indisputable that Maestre faxed his responses to Plaintiff's

RFAs to Anderson on July 23, 2018—a mere five days late—and Anderson received

them that same day. Anderson admitted in a declaration dated July 27, 2018 that he

received Maestre's RFA responses on July 23, 2018. (Doc. No. 31-1, ¶ 10.)

Notwithstanding this fact, Anderson thereafter misrepresented to the Court—orally

and in sworn declarations—that Maestre never responded to the RFAs. (Doc. No. 58-

1, ¶ 5; Doc. No. 109-3, at 11:4–5, 12:14–17.) Although at other times Anderson stated

that Maestre failed to serve any "timely" responses to the RFAs, "[t]he fact that he

did not blatantly lie to the Court" in such instances does not mean that his statements

were not misleading. Dillon v. BMO Harris Bank, N.A., No. 1:13-cv-897, 2016 U.S.

Dist. LEXIS 135219, at *42 (M.D.N.C. Sept. 30, 2016), aff'd, 891 F.3d 508 (4th Cir. 2018). "Factual statements by counsel that are so carefully worded as to be both technically accurate and misleading by omission are of particular concern, as they reflect an intent to lead the Court down the garden path. Courts rely on the candor of counsel and should not have to parse an attorney's language and representations for loopholes, half-stated exceptions, or 'truthiness.'" Id. at *43.

To put it another way, that the duty is referred to as one of candor rather than truthfulness is not for naught—one can be truthful without being candid. Anderson had multiple opportunities to inform the Court of Maestre's late responses to the RFAs and should have done so. At an absolute bare minimum, Anderson should have informed the Court of the late RFA responses when the Court issued the summary judgment order that clearly demonstrated the Court mistakenly believed that Maestre had not responded to the RFAs at all. Anderson did not inform the Court of Maestre's late RFA responses in his February 22, 2019 motion for sanctions that was grounded in part on Defendants' purported failure to serve any RFA responses, in his February 22, 2019 supporting declaration (which instead falsely states that Defendants had not responded to the RFAs), in his motion for summary judgment that was grounded entirely on Plaintiff's RFAs, in his declaration in support of his summary judgment motion, during the summary judgment hearing—despite being directly asked by the Court whether he received any responses to the RFAs—or after the Court issued its summary judgment order that was obviously based on the incorrect fact that Maestre never responded to the RFAs. Anderson's false

representations that Maestre never responded to the RFAs, as well as his misleading representations that Maestre failed to serve any timely responses to the RFAs, violated Anderson's duty of candor as an officer of the Court and Rule 3.3 of the North Carolina Rules of Professional Conduct.[5]

Despite having the opportunity to respond to Defendants' motion both in writing and orally at a hearing, Anderson has completely failed to provide any meaningful response or explanation. In fact, the hearing transcript is replete with statements by Anderson denying any wrongdoing and maintaining that he never received responses to the RFAs because the responses he received on July 23, 2018 did not comply with the Federal Rules of Civil Procedure. (Tr. 17:21–18:1, 18:16–19:4, 21:3–5, 23:12–21, 27:22–24, 33:5–6, 33:7–13, 34:20–21, 35:5–7.) In essence, Anderson contends that he was justified in failing to tell the Court that Maestre in fact sent responses to the RFAs because the responses did not comply with the rules and, thus, were effectively nonexistent. This argument is meritless.

As an initial matter, Anderson told the Court multiple times at the hearing on Defendants' omnibus motion that Maestre's RFA responses contained objections, suggesting that this somehow rendered the responses deficient. (Tr. 24:9–11, 27:22–24, 33:20.) This is yet another falsity—Maestre's RFA responses did not contain a single objection. (Doc. No. 122-5.)

Anderson also argues that Maestre's RFA responses were not signed or

---

[5] Rule 3.3(a) states: "A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

verified. (Doc. No. 122, at 9; Tr. 17:24–25, 18:23–19:1, 23:12–20, 27:22–24, 33:13–15.) Responses to RFAs are not required to be verified, and Defendants have cured any signature deficiency. Rule 26(g)(2) states that "[o]ther parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention." Anderson first raised the lack of signature on the RFA responses in his response to Defendants' omnibus motion. Thereafter, Defendants re-served the RFA responses bearing a handwritten signature, thus curing any signature deficiency. (Doc. No. 125, ¶ 4; Doc. No. 125-1.) Moreover, that Anderson "had no duty to act" on the RFA responses because they lacked a signature does not explain or justify Anderson failing to inform the Court of the responses and misleading the Court to believe that Maestre never responded to the RFAs.

Anderson further argues that Maestre's responses are deficient under Rule 36. (Doc. No. 122, at 6–8.) Rule 36(a)(4) states that "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Maestre's responses to RFAs 6 and 28 state "[t]his matter cannot be admitted or denied" but do not state in detail why Maestre cannot truthfully admit or deny the requests. (Doc. No. 122-5.) Of the fifty-eight RFAs, however, Maestre admits twenty-

13

four requests, denies thirty requests, and admits in part and denies in part two requests. (Doc. No. 122-5.) As these fifty-six responses are absolutely sufficient and proper, Maestre substantially complied with Rule 36. Moreover, Rule 36(a)(6) provides the mechanism for addressing any deficiency in Maestre's responses—a deficiency in two RFA responses does not explain or justify Anderson failing to inform the Court of the responses and misleading the Court to believe that Maestre never responded to the RFAs.[6]

In addition, Anderson contends that the RFA responses were not properly served under Rule 5. (Doc. No. 122, at 8–9; Tr. 23:15.) It is true that Maestre did not properly serve the responses under Rule 5; however, Maestre was proceeding pro se at the time, and "[a]lthough the rules of civil procedure apply equally to pro se litigants as well as litigants with representation, this court does not expect a pro se litigant to perfectly comply with all procedural rules." Fireman's Ins. Co. v. Herbert, No. 4:04cv139, 2005 U.S. Dist. LEXIS 38218, at *7 (E.D. Va. Dec. 20, 2005); see also Mandizha v. Bank of Am. Corp., 3:17-cv-00258, 2018 U.S. Dist. LEXIS 140757, at *3 (W.D.N.C. Aug. 20, 2018) (stating that "[t]he greater latitude awarded to pro se litigants entitles them to more lenient enforcement of the Federal Rules of Civil Procedure"). The Fourth Circuit has stated that "trial courts are encouraged to liberally treat procedural errors made by pro se litigants, especially when a technical

---

[6] Rule 36(a)(6) states: "The requesting party may move to determine the sufficiency of an answer or objection. . . . On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."

or arcane procedural rule is involved." <u>Bauer v. Comm'r of the IRS</u>, 97 F.3d 45, 49 (4th Cir. 1996). Anderson did not raise any objection to service until his response to Defendants' omnibus motion, and the Court likely would have excused Maestre's noncompliance with Rule 5, especially because Anderson in fact received the responses. And again, that Maestre improperly served the responses does not justify or explain Anderson failing to inform the Court of the responses and misleading the Court to believe that Maestre never responded to the RFAs.

Moreover, that Maestre responded to the RFAs late did not obviate the need for Anderson to inform the Court that Maestre in fact responded, albeit late. Although Rule 36(a)(3) provides that a request is admitted if a party fails to timely respond to the request, a district court has broad discretion to find such a request not admitted. <u>Nguyen v. CAN Corp.</u>, 44 F.3d 234, 242–43 (4th Cir. 1995). Even in cases with represented litigants, courts draw a distinction between late responses and a complete failure to respond: "[C]ourts are particularly responsive to allowing late answers to requests for admission when summary judgment is involved. . . . It does not further the interests of justice to automatically determine the issues of a lawsuit and enter summary judgment against a party because a deadline is missed." <u>Lonewolf v. Garrett</u>, No. 5:18cv00004, 2019 U.S. Dist. LEXIS 77290, at *16 (W.D. Va. May 7, 2019) (omission in original); <u>see</u> <u>also</u> <u>Daimler Tr. v. Prestige Anapolis, LLC</u>, No. 16-00544, 2017 U.S. Dist. LEXIS 112846, at *12 (D. Md. July 18, 2017) (stating that unanswered RFAs can serve as the basis for summary judgment but recognizing that, "in the posture of summary judgment, late responses should not be summarily

rejected"). Courts are especially inclined to accept late responses to RFAs when pro se litigants are involved. <u>Aramark Unif. & Career Apparel, LLC v. Hernandez</u>, No. 7:16-cv-336, 2018 U.S. Dist. LEXIS 15189, at *7–8 (E.D.N.C. Jan. 31, 2018) (recognizing that a court's discretion to find RFAs not to be admitted "may be especially warranted in cases involving pro se litigants" and declining to deem the RFAs admitted where pro se defendant served late responses).

Last, during the hearing on Defendants' omnibus motion, Anderson repeatedly referred to the February 1, 2019 Stipulation.[7] (Tr. 19:5–12, 23:7–11, 25:5–7, 34:9– 19.) As discussed above, the Stipulation was signed by Anderson and Defendants' former counsel, Tran, who got involved in this case after Maestre sent his RFA responses to Anderson. It is unclear whether Anderson informed Tran of Maestre's late RFA responses once Tran got involved, but the evidence suggests Anderson did not so inform Tran for at least three reasons. First, after Tran made an appearance in this action, Anderson inexplicably served Plaintiff's RFAs on Tran even though Anderson had received Maestre's RFA responses three months earlier. (Doc. No. 64-3, ¶ 7.) Second, the February 1, 2019 Stipulation states Defendants have asked that Maestre be relieved of his deemed admissions, omits Maestre responded to the RFAs in July 2018, and states Maestre will be relieved of his admissions if he responds to the RFAs by February 21, 2019. (Doc. No. 50, at 5–6.) The Stipulation is thus

---

[7] During the hearing, Anderson twice told the Court that the Stipulation was approved by the Court and resulted in a court order. (Tr. 25:5–7, 35:11–13.) This is false—the Stipulation was not approved by the Court and did not result in a court order.

misleading in that it implies Maestre never responded to the RFAs. Moreover, if Tran had known that Maestre responded to the RFAs a mere five days late in July 2018, he likely would not have agreed that Maestre would be relieved of his "admissions" only if Maestre served RFA responses, again, by February 21, 2019—over eight months after the RFAs were first served in June 2018 and over four months after they were inexplicably served again on Tran. Third and last, when the Court asked Tran during the summary judgment hearing if Defendants had responded to the RFAs, Tran was unable to inform the Court that Maestre had in fact responded. (Doc. No. 109-3, at 12:3–13.) The combination of Anderson re-serving the RFAs on Tran after receiving responses thereto, the Stipulation seemingly founded on Maestre's purported total failure to respond to the RFAs, and Tran's unawareness at the summary judgment hearing of Maestre's July 2018 responses tends to suggest Anderson did not inform Tran of Maestre's RFA responses.

More importantly, however, even if Tran was aware of Maestre's responses to the RFAs at the time of the February 1, 2019 Stipulation, the Stipulation in no way justifies or excuses Anderson's repeated failure to inform the Court that Maestre responded to the RFAs in July 2018.

At bottom, Anderson repeatedly misled the Court to believe that Maestre never responded to the RFAs, and Anderson has not provided any explanation or justification for his violation of his duty of candor, despite having the opportunity to do so. Revocation of Anderson's pro hac vice admission would be appropriate on this misconduct alone. Nevertheless, other misconduct also supports revocation of

Anderson's pro hac vice admission. In addition to his misrepresentations regarding the RFAs, Anderson made misrepresentations to the Court regarding the FedEx package he received from Maestre. Anderson first told the Court during the summary judgment hearing that he "did not even open it or look at it." (Doc. No. 109-3, at 14:15–16.) Then Anderson stated that he "did go through it" and he "didn't say that [he] didn't read it"—directly contradicting his earlier statement. (Doc. No. 109-3, at 15:16, 16:13–14.) Anderson represented to the Court that the documents in the package "didn't make sense," "weren't responsive," "did not correspond to any discovery requests," were "like phone book ads and things," and were "just no value in this case." (Doc. No. 109-3, at 16:14–17:2.) This was patently false—there was not a single "phone book ad" or anything of the sort. Instead, the package contained Maestre's responses to Plaintiff's second requests for production and interrogatories, and this fact would have been obvious from even the most cursory review of the documents. (Doc. No. 77-1.) As with his misrepresentations regarding the RFAs, Anderson has not offered any explanation for his misrepresentations regarding these documents.

Further, revocation of Anderson's pro hac vice admission is warranted not only because of his violations of his duty of candor, but also because of his unprofessional conduct surrounding the preliminary injunction hearing. See A1 Procurement, 2015 U.S. Dist. LEXIS 174898, at *14 (identifying unprofessional conduct as a ground for revocation of pro hac vice admission). Although there is a dispute as to what was said between Garcia and Anderson at Maestre's aunt's restaurant the day before the

preliminary injunction hearing, it is indisputable that Anderson approached Garcia at the counter and gave her the middle finger. This conduct is grossly unprofessional and unjustifiable. What is more is that Anderson downplays this misconduct and, once again, accepts no responsibility. Anderson described the incident during the hearing as follows:

> It wasn't nearly as heavy handed as counsel would like it to be. Quite frankly I was a little bit amused. You can see in the picture I'm actually laughing because I said, 'You can leave this for [Maestre].' And that was when I flipped the bird at them because they wouldn't put him in contact with me and he was avoiding me.

(Tr. 31:7–12.) Likewise, Anderson approaching Maestre and Teran in the courthouse hallway on the day of the preliminary injunction hearing, demanding their identification, and taking photographs of their driver's licenses is unprofessional—regardless of whether it occurred before or after the hearing.[8]

_____

[8] Maestre first raised this identification incident in his declaration submitted prior to the hearing on Defendants' omnibus motion. (Doc. No. 116, ¶ 31.) Maestre's declaration also states that Anderson called him on two occasions after entry of the summary judgment order and threatened to have Maestre and Teran arrested for failing to comply with the order. (Doc. No. 116, ¶¶ 46–48.) Anderson submitted a declaration in response, but he did not address either incident. (Doc. No. 122-2.) During the hearing, the Court heard live testimony from Maestre as to both incidents. (Tr. 51:6–52:5, 53:9–57:23.) The Court then allowed Anderson to cross examine Maestre regarding both the identification incident and the post-summary judgment phone calls. (Tr. 58:6–69:6.) Despite being offered this opportunity, Anderson's questioning primarily related to Maestre's alleged noncompliance with the Court's summary judgment order—Anderson asked limited questions as to the telephone calls but did not ask any questions regarding the identification incident at the courthouse the day of the preliminary injunction hearing. After giving Anderson a sufficient opportunity to cross examine Maestre as to his truthfulness and bias—and as Anderson had the opportunity to, but did not, address the identification incident or the post-summary judgment phone calls in his responsive materials—the Court declined to allow Anderson to put on additional evidence. Moreover, although the Court stated during the hearing that it would allow Anderson until March 27, 2020

In sum, the Court deems that Anderson's pro hac vice admission should be revoked due to his violations of his duty of candor and unprofessional conduct surrounding the preliminary injunction hearing. Anderson misled the Court to believe that Maestre never responded to the RFAs, failed to correct the Court's mistaken belief after it entered summary judgment in Plaintiff's favor based solely on the false notion that Maestre never responded to the RFAs, misrepresented to the Court that the documents he received from Maestre were not relevant to this case, gave the middle finger to Garcia when she could not or did not tell him where Maestre was, and approached pro se defendants in the courthouse the day of the preliminary injunction hearing, demanded their identification, and took photographs of their driver's licenses. Despite having notice of these grounds for potential revocation and a meaningful opportunity to respond, Anderson has not accepted any responsibility for his actions or otherwise provided any explanation or justification for his misconduct. In fact, Anderson's conduct before the Court—in attitude, lack of respect, and gross lack of professionalism—is akin to that captured in the photograph of his interaction with Garcia, supra. "It is impossible, however, without reading the testimony at some length, and thereby obtaining a knowledge of the setting in which the objectionable matter occurred, to appreciate fully the extent of the misconduct." Berger v. United States, 295 U.S. 78, 85 (1935). Anderson's conduct before this Court

---

to submit any telephone records as to the phone calls, the Court does not rely on or consider the alleged calls in deciding whether to revoke Anderson's pro hac vice admission. Thus, any records relating to the same are not relevant to the Court's analysis.

is the most contumacious the Court has experienced.  He does not deserve pro hac vice status.  Therefore, the Court revokes Anderson's pro hac vice admission.

## IV.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' omnibus motion, (Doc. No. 106), is **GRANTED in part**, and the pro hac vice admission of Stephen L. Anderson is **REVOKED**.  The Court will address the remainder of Defendants' omnibus motion in a separate order.

Signed: March 6, 2020

Robert J. Conrad, Jr.
United States District Judge