UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00727-RJC-DCK

| | |
|---|---|
| LA MICHOACANA NATURAL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| LUIS MAESTRE, an individual, d/b/a LA | ) |
| MICHOACANA and/or LA LINDA | ) |
| MICHOACANA; ADRIANA TERAN, an | ) |
| individual, d/b/a LA MICHOACANA | ) |
| and/or LA LINDA MICHOACANA; LA | ) |
| MICHOACANA, | ) |
| | ) |
| Defendants/Counterclaim | ) |
| Plaintiffs. | ) |

**ORDER**

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, (Doc. No. 167); Defendants' Memorandum in Support, (Doc. No. 168); Plaintiff's Response in Opposition, (Doc. No. 169); Defendants' Reply, (Doc. No. 172); Plaintiff's Motion to Dismiss its Third and Fifth Claims, (Doc. No. 173); Plaintiff's Memorandum in Support, (Doc. No. 174); Defendants' Response in Opposition, (Doc. No. 175); and Plaintiff's Reply, (Doc. No. 176).

These matters have been fully briefed, and on August 30, 2021, the Court conducted a hearing where it heard oral arguments from the parties. The Court has reviewed the pleadings, exhibits thereto, and applicable law and has considered the parties' oral arguments. For the reasons stated herein, Defendants' Motion for Summary Judgment, (Doc. No. 167), is **GRANTED** and Plaintiff's Motion to Dismiss its Third and Fifth Claims, (Doc. No. 173), is **DENIED as moot**.

# I.   BACKGROUND

## A.   Procedural Background

Plaintiff La Michoacana Natural, LLC ("Plaintiff") filed a Complaint against Defendants Luis Maestre ("Maestre") and Adriana Teran ("Teran")[1] individually, and against La Michoacana, a business entity, (collectively, "Defendants") on December 19, 2017.  (Doc. No. 1).  Defendants filed *pro se* Answers to the Complaint on May 1, 2018.  (Doc. Nos. 25, 26).  After retaining representation, Defendants filed an Amended Answer to the Complaint along with counterclaims for common law trademark infringement and unfair competition on January 3, 2019.  (Doc. No. 48).  Defendants filed a Motion for Leave to File First Amended Counterclaims on November 3, 2020, (Doc. No. 159), which this Court granted, (Doc. No. 177).   On December 11, 2020, Defendants filed the instant Motion for Summary Judgment on all claims against them and on all counterclaims asserted against Plaintiff.  (Doc. No. 167).  On January 14, 2021, Plaintiff moved to dismiss its Third and Fifth claims for relief.  (Doc. No. 173).

Plaintiff currently has eight claims pending against Defendants, including:

(1)   Trademark Infringement—15 U.S.C. § 1114;
(2)   Unfair Competition/False Designation of Origin—15 U.S.C. § 1125(a);
(3)   Federal Trademark Dilution—15 U.S.C. § 1125(c);
(4)   Cybersquatting—15 U.S.C. § 1125(d);
(5)   Infringement of Copyright;
(6)   Statutory Trademark Infringement—N.C. Gen. Stat. § 80-11;
(7)   Unfair and Deceptive Trade Practices—N.C. Gen. Stat § 75-1.1; and
(8)   Common Law Trademark Infringement and Unfair Competition.

Defendants have four counterclaims pending against Plaintiff, including:

(1)   Unfair competition under 15 U.S.C. § 1125(a) for use of the "La Michoacana" and "La Michoacana Natural" word marks;
(2)   Unfair competition under 15 U.S.C. § 1125(a) for use of the Indian Girl design;
(3)   Trademark infringement/unfair competition under North Carolina common law for use of the "La Michoacana" and "La Michoacana Natural" word marks; and

---

[1] The Complaint was filed against Maestre and Teran, individually, and for doing business as La Michoacana and/or La Linda Michoacana.  (Doc. No. 1).

2

(4)     Trademark infringement/unfair competition under North Carolina common law for
        use of the Indian Girl design.

**B.    Factual Background**

        i.    <u>Plaintiff's Information</u>

In 1999, Rigoberto Fernandez began operating an ice cream business, El Michoacano, in Florida as a licensee of Productos Lacteos Tocumbo, S.A. de C.V. ("Prolacto"), a Mexican corporation.  (Doc. No. 1 at ¶ 5).  On November 15, 2013, Rigoberto Fernandez established Plaintiff La Michoacana Natural, LLC under the laws of North Carolina.  (<u>Id.</u> at ¶ 5).  Plaintiff claims to have rights in the La Michoacana marks which include both the name "La Michoacana" and the following design marks (almost all of which feature the Indian Girl design).  (<u>Id.</u> at ¶ 2).



Plaintiff registered these marks with the State of North Carolina in September 2016.  (Doc. No. 1 at ¶¶ 8-16).  Plaintiff does not have federal registration for these marks.  (Doc. No. 167 at 9).

Since as early as August 1, 2014, Plaintiff has continuously owned and operated ice cream stores within North Carolina that use and display the above marks.  (Doc. No. 1 at ¶ 7).  Plaintiff currently owns and operates two stores in North Carolina, both in Mecklenburg County.  One is located at 6301 North Tryon Street, Charlotte, North Carolina 28213, and the other is located at

6300 South Boulevard, Suite 100, Charlotte, North Carolina 28213.  (Id.).[2]  Plaintiff's stores sell

Mexican-style ice cream called "paletas" as well as other frozen desserts and drinks.  (Id. at ¶ 5).

      ii.    <u>Defendants' Information</u>

     Defendants Luis Maestre and Adriana Teran operate La Michoacana (or La Linda

Michoacana), a business entity whose form is unknown.  (Id. at ¶ 19).  Defendants own and operate

a brick-and-mortar store called "La Michoacana" that sells paletas.  (Doc. No. 179 at ¶ 7).

Defendants' store is in Cabarrus County at 280 Concord Parkway South, Suite 112, Concord,

North Carolina, and opened in December 2015.  (Id.).  The sign on the exterior of Defendants'

store includes the name "La Michoacana" as well as the Indian Girl design as shown below.[3]  (Id.

at ¶¶ 7–8).



The dispute in this case stems from the parties use of the name "La Michoacana" and the Indian

Girl design.

      *a.*    *Use of the name "La Michoacana"*

     Defendant Luis Maestre claims that he has been using the name "La Michoacana" and the

Indian Girl design mark since long before this dispute arose.  (Id. at ¶ 1, 4–7).  According to

---

[2] Plaintiff previously also had a location at 1096 Concord Parkway North, Unit 7, Concord, North Carolina that opened in 2018, but closed a little over a year after opening.  (Doc. No. 168-2 at 54:2–19, 63:16–20).

[3] Because "Defendants did not have the means to fight a federal court lawsuit," Defendants took down the sign and have not used the name "La Michoacana" or the Indian Girl design since February 2018.  (Doc. No. 179 at ¶ 10).

Maestre, he obtained and operated a vendor table at the Sweet Union Flea Market in Monroe, North Carolina, at which he used the business name "La Michoacana" and "La Linda Michoacana," since November 2008 and June 2008 respectively. (Doc. No. 179 at ¶ 1; Doc. No. 116 at ¶ 2). The flea market is in Union County. Maestre also registered the internet domain <ww.lamichoacanapaleteria.com> and was identified as the registrant of the domain name as of November 22, 2016. (Doc. No. 1 at ¶ 17).

Patricia Arguelles, a non-party witness, and the Assistant Manager at the flea market, submitted a declaration that Maestre has had a stand at the flea market under the name "La Linda Michoacana" since November of 2008 based on her own personal knowledge. (Doc. No. 108 at ¶ 5).

Defendant Maestre claims that he sold paletas at the flea market, along with snow cones, mini donuts, Mexican candies, and DVDs. (Doc. No. 116 at ¶ 2). Ms. Arguelles testified that Maestre was known there as "the ice cream guy" or "the Mexican ice cream guy." (Doc. No. 168-4 at 58:13-59:2). However, two non-party witnesses—Walter Patterson and Hector Mendez—claim that neither has seen Maestre sell paletas. Mr. Patterson has worked as a vendor at Sweet Union Flea Market for the last seventeen years and states that he has only ever seen Maestre sell slushies, videocassettes, and other small items. (Doc. No. 169-2 at ¶¶ 1–3). Mr. Mendez has attended Sweet Union Flea Market approximately once every other month since 2011 for his job as a promotion's manager at a local radio station, and he can only recall Mr. Maestre selling Music CDs, mini-donuts, and corn-on-the-cob. (Doc. No. 169-3 at ¶¶ 1–4).

### b.    Use of the Indian Girl design

Maestre testified that he began using a banner at the flea market by at least March of 2013. (Doc. No. 169-1 at 35:8–10; Doc. No. 116 at ¶ 8). The banner, which is depicted below, "said La

5

Linda Michoacana and it featured an indigenous doll holding a paleta. And it also said . . . the words, the natural flavors of Mexico." (Doc. No. 169-1 at 32:1–4).



Ms. Arguelles testified that she took a picture, reproduced below, of the banner at Mr. Maestre's flea market stand on Father's Day[4] in 2013. (Doc. No. 108 at ¶¶ 7-8).

---

[4] In 2013, Father's Day was on Sunday, June 16.



Ms. Arguelles stored the picture on a computer at the flea market as part of her job and saved the photo under a folder labeled "Father's Day 2013." (Doc. No. 168-4 at 38:3–6). That computer is no longer available, and Ms. Arguelles does not have access to an electronic version of the photo, which means the metadata cannot be checked to confirm the date the picture was taken. (Id. at 39:11–24).

In addition to Ms. Arguelles' testimony and photo, uncontradicted declarations from three other non-party witnesses support Maestre's claim. First, Alma Garcia, a Sweet Union Flea Market vender from 2007 to 2016, whose own stand was next to Maestre's stand, states that Maestre was using the name "La Linda Michoacana" in June 2008 and that she saw the banner at Maestre's stand "all the time" starting in 2013. (Doc. No. 110 at ¶¶ 1–5). Second, Cesar Torres, a flea market customer who regularly visited the flea market on weekends from 2013 to 2015 and who shopped at Maestre's stand, states that he also saw the banner "all the time" starting in 2013. (Doc. No. 118 at ¶¶ 1–5). Third, Javier Lopez, owner and operator of "Signs & Stuff," stated that he created

a duplicate banner to the one described by Ms. Garcia and Mr. Torres for the Defendants in June 2014. (Doc. No. 114 at ¶ 3). In support of his statement, Mr. Lopez provided a receipt of the original sale dated June 7, 2014. (Doc. No. 114-1). The receipt is made out to "La Linda Michoacana," the contact person is Maestre, and it shows a hand drawn graphic of the banner that matches the banner from the picture. (Id.).

Maestre stated that he came across the Indian Girl design featured on his banner and in the La Michoacana design marks through a Google search sometime between 2009 and 2010 and learned that Alejandor Andrade was the original designer. (Doc. No. 169-4 at Response to Rog. 3; Doc. No. 169-1 at 51:10-16). Maestre than contacted Mr. Andrade and learned that he was located in Mexico. (Doc. No. 169-4 at Response to Rog. 3; Doc. No. 169-1 at 56:4–22). Mr. Andrade referred Maestre to Palateria La Michoacana ("PLM") because Mr. Andrade knew that PLM was in the United States and used the Indian Girl design. (Id.). Maestre then contacted Lorenzo Barraza at PLM. In an interrogatory response, Defendants said that in a conversation with Lorenzo Barraza they learned that PLM was not in the North Carolina market and that PLM would not take any action against Maestre for using the Indian Girl design. (Doc. No. 169-4 at Response to Rog. 3). In a subsequent deposition, Maestre claims that no one, including Mr. Andrade and Mr. Barraza, gave Maestre permission to use the Indian Girl design and that he has been using the design since 2013. (Doc. No. 169-1 at 58:5–10).

On December 22, 2016, Plaintiffs sent a cease-and-desist letter to Defendants' store. (Doc. No. 1 at Ex. L). The instant suit began one year later on December 19, 2017.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

8

56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249–50.

B.    Discussion

Defendants moved for summary judgment, asking the Court to dismiss all Plaintiff's claims against Defendants and to grant all Defendants' counterclaims against Plaintiff. As explained in detail below, the claims and counterclaims relate to trademark infringement.[5] As Defendants have priority of use of the marks and are the senior users in the Charlotte and Concord area of North Carolina, Defendants' counterclaims prevail.

i.    Plaintiff's Claims Against Defendants

a.    Claim 1: Trademark Infringement—15 U.S.C. § 1114

Defendants seek summary judgment on Plaintiff's trademark infringement claim under Section 32 of the Lanham Act, 15 U.S.C. § 1114, arguing that Plaintiff has no federally registered trademarks at issue in this case. In response to Defendants' argument, Plaintiff points out that it has properly pled and has ownership of a federal registration on its "La Michoacana Natural" mark—application number 78954490. (Doc. No. 169 at 2). To bring a claim under Section 32 of the Lanham Act, a party must have a registered mark. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992); see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 858 (1982).

A search of the Trademark Office's records shows this application is listed as "refused, dismissed, or invalidated" after the Trademark Office issued a notice of abandonment on June 2, 2021.[6] The notice of abandonment followed the Trademark Trial and Appeal Board's refusal to register this application. (Doc. No. 172-1). Plaintiff has asserted no other facts showing federal

---

[5] The Court is aware that Plaintiff has one claim for copyright infringement. However, as explained below, Plaintiff has no federal copyright registration which prevents Plaintiff from bringing this claim.
[6] Trademark Search: Trademark App. No. 78954490, USPTO, https://tsdr.uspto.gov/#caseNumber=78954490&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited Aug. 31, 2021).

registration of this or another mark at issue. Summary judgment is thus proper and claim one is **DISMISSED** as Plaintiff has no cause of action under Section 32 because it lacks a federally registered mark.

        *b.*      *Claim 2: Unfair Competition/False Designation of Origin—15 U.S.C. § 1125(a)*

Plaintiff's second claim alleges unfair competition and false designation of origin under Section 43 of the Lanham Act. 15 U.S.C. § 1125(a). Section 43 of the Lanham Act corresponds to unregistered marks. However, a federal trademark infringement claim under 15 U.S.C. § 1114 (Section 32) and a federal unfair competition claim under 15 U.S.C. § 1125 (Section 43), are determined using identical standards. A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000). To succeed on either claim, Plaintiff must show: "(1) that it owns a valid mark; (2) that the defendant used the mark in commerce and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers." Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 152 (4th Cir. 2012) (internal quotations omitted) (citing 15 U.S.C. § 1114(a); see Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 259 (4th Cir. 2007); People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001)).

Here, the parties agree that: the "La Michoacana" word mark and the Indian Girl design mark are valid marks; that Defendants used the marks in commerce without authorization from Plaintiff; that Defendants used the marks in connection with selling goods; and that consumer confusion is likely.[7] See generally (Doc. No. 1 (Plaintiff's Complaint)); (Doc. No. 179

---

[7] The Court is aware of the District of Columbia case involving nearly identical marks which found the Indian Girl design a protectable mark but found the "La Michoacana" word mark not protectable as it was descriptive and lacked secondary meaning. See Paleteria La Michoacana, Inc. V. Products Laceteos Tocumbo S.A. De C.V., 188 F.

(Defendants' Counterclaims); (Doc. No. 168 (Defendants' Motion for Summary Judgment)). The only issue the parties disagree on is priority of use (i.e., who between the parties used the marks first in commerce and has superior rights). As Plaintiff's remaining claims and Defendants' counterclaims involve this same issue, Defendants' motion hinges on this issue.

It is a bedrock principle of trademark law that ownership rights flow from actual use in the market. Columbia Mill Co. v. Alcorn, 150 U.S. 460, 463–64 (1893) (holding that to have trademark rights one must have "priority of appropriation; that is to say, the claimant of the trade-mark must have been the first to use or employ the [mark] on like articles of production"); Mazer v. Stein, 347 U.S. 201, 221 at n.5 (1954) (noting that trademark rights are "simply founded on priority of appropriation"). "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996). "The first user, then, to appropriate and use a particular mark—the 'senior' user—generally has priority to use the mark to the exclusion of any subsequent—or junior—users. Emergency One v. Am. Fire Eagle Engine Co., 332 F.3d 264, 268 (4th Cir. 2003).

Defendants' claim that Maestre began using the word mark "La Michoacana" in 2008 when selling paletas at the flea market and began using a banner with both the "La Michoacana" word mark and the Indian Girl design mark in early 2013, also when selling paletas at the flea market. Plaintiff disagrees.

Supp. 3d 22 (D.D.C. 2016), aff'd, 743 F. App'x 457 (D.C. Cir. 2018). As the parties have agreed the marks at issue in this case are protectable and there is a likelihood of consumer confusion, the Court does not address the merits of these issues.

Neither party disagrees that Plaintiff La Michoacana Natural, LLC was established under the laws of North Carolina on November 15, 2013; that Plaintiff began selling paletas at its store starting on August 1, 2014 using the name "La Michoacana" and various design marks (almost all of which feature the Indian Girl design); and that Defendants opened a brick-and-mortar store in December 2015 and sold paletas using the word mark "La Michoacana" and the Indian Girl design mark. There can be no genuine dispute that Plaintiff's priority of use date is August 1, 2014, as Plaintiff did not use the marks to sell paletas until that date.

Defendants produced multiple pieces of evidence to prove their priority of use date predates Plaintiff's August 1, 2014, date including: testimony from four non-party witnesses; photographs of the banner from June 16, 2013; and a receipt for a duplicate banner dated June 7, 2014. The first witness was the assistant manager at the flea market. She confirms that Maestre was using the name "La Linda Michoacana" in 2008 and had the banner in 2013. She also provided a picture that she personally took of the banner in use at Maestre's flea market stand which she claims is from June 2013. An electronic copy of the photo is unavailable so the metadata cannot be checked to confirm this date. The second witness was a vender at the flea market from 2007 to 2016 whose own stand was next to Maestre's stand. She states that Maestre was using the name "La Linda Michoacana" in June 2008 and that she saw the banner at Maestre's stand "all the time" starting in 2013. The third witness was a flea market customer who regularly visited the flea market on weekends from 2013 to 2015 and who shopped at Maestre's stand. He states that he also saw the banner "all the time" starting in 2013. The fourth witness created a duplicate banner for Defendants in June 2014. This witness also produced an original sales receipt for the duplicate banner dated June 7, 2014. The hand drawn graphic of the banner on the sales receipt matches the banner in the photograph taken by the first witness.

The only evidence put forth by Plaintiff which allegedly contradicts the prior use date of Defendants are two declarations from non-party witnesses. The first witness was a fellow vendor at the flea market who has been operating a stand on the weekend for approximately the past seventeen years. The second witness attended Sweet Union Flea Market approximately once every other month since 2011 for his job as a promotion's manager at a local radio station. Both witnesses state that they have never seen, nor do they recall ever seeing, Maestre selling paletas or using the banner. Plaintiff alleges that this contradicts Defendants' prior use evidence such that there is a genuine dispute. This Court disagrees.

First, the two non-party witness declarations produced by Plaintiff are untimely. Plaintiff was on notice of the prior use issue at least a year before disclosing these witnesses as Defendants' explained their prior use argument on November 21, 2019, when they asked the Court to vacate a summary judgment order. (Doc. Nos. 78, 106–118). However, Plaintiff failed to disclose these witnesses until December 21, 2020, (Doc. No. 172-4), more than three years after filing its Complaint, (Doc. No. 1), and over a month after the extended fact discovery period ended on November 11, 2020. (Doc. No. 143). The disclosure also occurred after Defendants filed the instant summary judgment motion on December 11, 2020. (Doc. No. 167). Plaintiff provided no information on why the untimely disclosures should be allowed, absent noting that Plaintiff's current counsel had not been involved until more recently in the case.

Rule 26(a) requires parties to disclose and provide the names and contact information of "each individual likely to have discoverable information, along with the subjects of that information, that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a). Rule 26(e) requires that parties supplement or correct its disclosures in a "timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect,

and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). "Supplementation to identify a witness for the first time after the close of discovery is manifestly not timely. Indeed, [a contrary] interpretation [] would subvert the discovery process and promote trial by ambush." United States v. Whiterock, 5:09-HC-2163-FL, 2012 U.S. Dist. LEXIS 70633, at *4–6 (E.D.N.C. May 18, 2012). Indeed, courts have struck untimely disclosures with facts like those at issue here. See, e.g., EQT Gathering, LLC v. Marker, No. 2:13-cv-08059, 2015 U.S. Dist. LEXIS 167930, at *20–21 (S.D.W. Va. Dec. 16, 2015) (striking disclosures two months after close of discovery and one week after opposing party filed for summary judgment); Gomez v. Haystax Tech., Inc., 761 F.App'x 220, 233–34 (4th Cir. 2019) (finding that the district court did not abuse its discretion in excluding several witnesses disclosed on the last day of discovery and one witness disclosed three weeks after the close of discovery); United States v. Cochran, 4:12-CV-220-FL, 2014 U.S. Dist. LEXIS 12435, at *16 (E.D.N.C. Jan. 30, 2014) (denying plaintiff's motion for leave to disclose additional witnesses as untimely where "plaintiff undoubtedly encountered difficulty in locating" these individuals, but never requested an extension of discovery and waited until after the close of discovery and "shortly before the dispositive motions deadline to identify these men").

If a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The mandatory exclusion set forth in Rule 37(c)(1) "does not require a finding of bad faith or callous disregard of the discovery rules." Southern States Rack & Fixture, Inc. v. Sherwin Williams Co., 318 F.3d 592, 596 (4th Cir. 2003). "The party failing to disclose information bears

15

the burden of establishing that the nondisclosure was substantially justified or was harmless." Bresler v. Wilmington Trust Co., 855 F.3d 178, 190 (4th Cir. 2017).

Plaintiff has failed to meet its burden in showing the untimely disclosures were substantially justified or harmless. The discovery period in this case was extended multiple times and lasted for over three years. Plaintiff was also on notice that Defendants were arguing priority of use for at least a year before the discovery deadline. The addition of new counsel is not sufficient to overcome Plaintiff's burden of showing the delay was substantially justified. Nor has Plaintiff shown how Defendants would not be harmed by allowing these untimely disclosures.

Second, even if the declarations were timely produced, they raise no genuine dispute of material fact. Plaintiff's allegation that genuine facts are in dispute is not enough, by itself, to defeat summary judgment. Anderson, 477 U.S. at 248. There must actually be a "genuine" dispute. Here, Defendants put forth four non-party declarations, photos, and a receipt showing that Maestre used the "La Michoacana" word mark and Indian Girl design mark in commerce before August 1, 2014. Plaintiff has only provided negative evidence—that two non-party witnesses have not seen, or do not remember seeing, the banner or Maestre sell paletas. Both Defendants' positive evidence (of Maestre using the banner and selling paletas) and Plaintiff's negative evidence (that two people have not seen Maestre use the banner or sell paletas) can co-exist and not be in material dispute. For example, two people can walk down the street together at the same time and the following pieces of evidence can both be true and not in dispute: (1) person A sees a stray dog while walking down the street and (2) person B does not see the stray dog while walking down the street.

This issue of positive versus negative evidence is similar to cases involving whether an employer complied with the law by posting in the workplace notices of certain employment laws

16

and rights. In connection with summary judgment motions filed by the employer, plaintiffs often submit declarations stating that employees did not see the notices. Courts have held these declarations insufficient to raise a triable issue of fact as to whether the notices were posted. See, e.g., English v. Pabst Brewing Co., 828 F.2d 1047, 1050 (4th Cir. 1987) (plaintiff's affidavit stating that he never saw notice of right to be free from age discriminations posted at workplace was insufficient to contest employer's evidence that notice was posted); Vaught v. R.R. Donnelley & Sons Co., 745 F.2d 407, 412 (7th Cir. 1984) (allegation that employee did not see notices prohibiting age discrimination was insufficient given evidence that notices were posted); Cameron v. T-Mobile USA Inc., No. 04-272-KI, 2005 U.S. Dist. LEXIS 42895, at *11 (D. Or. Apr. 28, 2005) (fact that two individuals "never saw" any notice posted by employer is insufficient to create question of fact to defeat employer's summary judgment motion, which was supported by a declaration stating that notices had been posted for a period of years, accompanied by pictures of notices).

Accordingly, there is no genuine dispute over Defendants' evidence showing that Maestre used the marks prior to August 1, 2014. As Defendants' have priority of use, Plaintiff cannot succeed on any trademark infringement or unfair competition claims, under federal or state statute or common law. Summary judgment is thus proper and claim two is **DISMISSED**.

### c. Claim 3: Federal Trademark Dilution—15 U.S.C. 1125(c)

Plaintiff's third claim alleges federal trademark dilution. To prove dilution, Plaintiff must show that: (1) plaintiff owns a famous mark that is distinctive; (2) defendant has commenced using a mark in commerce that is diluting the famous mark; (3) a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and (4) the association is likely to impair the distinctiveness of the famous mark or harm the reputation of the famous mark. Rosetta Stone, 676 F.3d at 167–68. "[A] mark is famous if it is widely recognized by the

17

general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Here, Plaintiff's claim fails as Defendants have priority of use as described above. Because Defendants started using the marks before Plaintiff in North Carolina, Plaintiff cannot meet its burden to show that Defendants commenced using the mark after Plaintiff's mark allegedly became famous, as required by 15 U.S.C. § 1125(c)(2). Moreover, Plaintiff failed to address this issue in its response opposing summary judgment and throughout the litigation has failed to provide sufficient evidence that its mark is "famous" as defined under the Lanham Act. Summary judgment is thus proper and claim three is **DISMISSED**.

> ### d.    *Claim 4: Cybersquatting—15 U.S.C. § 1125(d)*

Plaintiff's fourth claim alleges cybersquatting of the following domain name in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), under 15 U.S.C. § 1125(d)(1): www.lamichoacanapaleteria.com. (Doc. No. 1 at ¶ 1, 52–56). For Plaintiff to succeed on its ACPA claim, it must prove (i) that Defendants' use of lamichoacanapaleteria.com constitutes either trademark infringement or trademark dilution and (ii) that Defendants have or had a bad faith intent to profit from use of the "lamichoacanapaleteria.com" domain name. Eurotech, Inc. v. Cosmos Eur. Travels AG., 213 F. Supp. 2d 612, 623 (E.D. Va. 2002); Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 232–33 (4th Cir. 2002). Here, Plaintiff cannot prove infringement or dilution because it lacks priority of use as previously explained. Summary judgment is thus proper and claim four is **DISMISSED.**

> ### e.    *Claim 5: Infringement of Copyright*

Plaintiff's fifth claim alleges copyright infringement. To bring this claim, registration of the copyright is required. 17 U.S.C. § 411(a); Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 887–88 (2019) (finding that Section "411(a) bars a copyright owner from suing for infringement until registration has been made") (internal quotations omitted); Bolier &

18

Co. v. Decca Furniture, Inc., 58 F. Supp. 3d 491, 497 (W.D.N.C. 2014) (dismissing copyright claim for failure to allege a copyright registration) (citing 17 U.S.C. § 411(a)). Plaintiff fails to allege that Plaintiff has registered a copyright. As registration is a prerequisite to maintain a copyright infringement action, summary judgment is proper and claim five is **DISMISSED.**

> f.   *Claim 6: Statutory Trademark Infringement—N.C. Gen. Stat. § 80-11*

Plaintiff's sixth claim alleges statutory trademark infringement under North Carolina law. Under N.C. Gen. Stat. § 80-11, registration of a mark is required to obtain relief. However, the North Carolina Act also explicitly provides that nothing in the statutes "shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law." N.C. GEN. STAT. § 80–13; HCW Ret. & Fin. Servs., LLC v. HCW Emp. Ben. Servs., LLC, No. 10 CVS 1447, 2015 WL 4238193, at *7–8 (N.C. Super. Ct. July 14, 2015) ("At common law, trademark ownership is acquired by actual use of the mark in a given market. Between competing users, priority of ownership in a mark is determined by the first use of the mark in a genuine commercial transaction.") (internal quotations and citations omitted). Therefore, even if a party has successfully registered its marks in North Carolina, a different party who used those same marks prior to the registering party's initial use would have greater rights despite not having registered the mark.

While Plaintiff successfully registered numerous marks, the rights to enforce those marks under North Carolina law is subject to any common law rights the parties may have. As discussed above, Defendants have priority of use of the marks and superior rights comparative to Plaintiff. Summary judgment is thus proper and claim six is **DISMISSED.**

> g.      *Claim 7: Unfair and Deceptive Trade Practices—N.C. Gen. Stat §*
>         *75-1.1*

Plaintiff's seventh cause of action alleges "unfair and deceptive trade practices," under N.C. Gen. Stat. § 75-1.1 (the "UDTPA Claim"), which outlaws "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." To establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. Spartan Leasing, Inc. v. Pollard, 101 N.C. App. 450, 461–62 (1991). The determination as to whether an act is unfair or deceptive is a question of law for the court. Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000).

Plaintiff previously argued that its UDTPA Claim requires the same analysis as its Lanham Act claims. (Doc. No. 64 at 25–26). Plaintiff cannot prove trademark infringement because Defendants have priority of use. Accordingly, Plaintiff cannot prove a UDTPA claim in this case as the UDTPA claim and the trademark infringement claim rise and fall together. Summary judgment is thus proper and claim seven is **DISMISSED**.

> h.      *Claim 8: Common Law Trademark Infringement and Unfair*
>         *Competition*

Plaintiff's eighth claim alleges common law trademark infringement and unfair competition. "The tests for trademark infringement and unfair competition under the Lanham Act are essentially the same as that for common law unfair competition under North Carolina common law; all focus on the likelihood of confusion as to the source of the goods involved." Georgia Pacific Consumer Prod., LP v. Von Drehle Corp., 618 F.3d 441, 449 (4th Cir. 2010); see also Windsor Jewelers, Inc. V. Windsor Fine Jewelers, LLC, 2009 NCBC 2, 2009 WL 385574 (N.C. Super. Ct. Feb. 16, 2009). Common law trademark ownership is determined by priority of

20

ownership based on the first use of the mark in a genuine commercial transaction. HCW Ret. & Fin. Servs., LLC v. HCW Emp. Ben. Servs., LLC, No. 10 CVS 1447, 2015 WL 4238193, at *8 (N.C. Super. Ct. July 14, 2015).

As previously explained, Defendants used the marks in commerce before Plaintiff and have superior rights. Accordingly, Plaintiff cannot succeed on this claim and summary judgment is proper. Claim eight is **DISMISSED**.

ii.   <u>Defendants' Counterclaims Against Plaintiff</u>

Defendants brought four counterclaims against Plaintiff alleging (1) unfair competition under 15 U.S.C. § 1125(a) for use of the "La Michoacana" and "La Michoacana Natural" word marks, (2) unfair competition under 15 U.S.C. § 1125(a) for use of the Indian Girl design, (3) trademark infringement/unfair competition under North Carolina common law for use of the "La Michoacana" and "La Michoacana Natural" word marks, and (4) trademark infringement/unfair competition under North Carolina common law for use of the Indian Girl design. All four claims rise and fall together. "The tests for trademark infringement and unfair competition under the Lanham Act are essentially the same as that for common law unfair competition under North Carolina common law; all focus on the likelihood of confusion as to the source of the goods involved." Georgia Pacific, 618 F.3d at 449; see also Windsor Jewelers, Inc. V. Windsor Fine Jewelers, LLC, 2009 NCBC 2, 2009 WL 385574 (N.C. Super. Ct. Feb. 16, 2009). As previously explained, the parties do not dispute that the marks are valid and that there is a likelihood of confusion. And, as this Court has already determined, Defendants have priority of use. Plaintiff's defense against enforcement of Defendants' rights is naked licensing and bad faith. As explained below, these defenses cannot defeat summary judgment, and Defendants' counterclaims are **GRANTED**.

### a. Plaintiff's Defenses

"Naked licensing" occurs when a licensor of a trademark fails to exercise adequate quality control over its licensee, and it can result in abandonment of the licensed mark. See <u>Beach Mart, Inc. v. L&L Wings, Inc.</u>, No. 2:11-CV-44-FL, 2020 U.S. Dist. LEXIS 154059, at *16 (E.D.N.C. Aug. 25, 2020). A party asserting a claim of naked licensing bears "a high burden of proof" because the consequence of such a finding is "essentially … a forfeiture." <u>Id.</u> at 17.

Here, Plaintiff argued naked licensing for the first time as an affirmative defense in its response in opposition to Defendants' summary judgment motion. (Doc. No. 169 at 13–14). To assert new legal theories, Rule 15(a) requires a party to seek leave from the court or ask the opposing party for permission to amend its pleadings. Fed. R. Civ. P. 15(a). However, Plaintiff never included this new legal theory in any pleading. (<u>Compare</u> Doc. No. 169 <u>with</u> Doc. Nos. 51, 180). Nor did Plaintiff seek leave or request Defendants' permission to amend its pleadings to include this defense. (Doc. No. 172 at 23). Courts in this circuit have excluded new legal theories espoused for the first time on summary judgment. <u>Eversole v. Ford Motor Co.</u>, No. 3:11-cv-428-DJN, 2012 U.S. Dist. LEXIS 49166, at *23 (E.D. Va. Apr. 6, 2012) (rejecting a party's "last-ditch effort to defeat summary judgment" by arguing a new theory not set forth in the pleading); <u>Adams v. Greenbrier Minerals, LLC</u>, 2018 U.S. Dist. LEXIS 193009, at *14 (S.D.W. Va. 2018) ("Allowing the plaintiff to assert a new legal theory at the summary judgment stage would essentially constitute an amendment of the pleadings, which would unfairly prejudice the defendant.") (citing <u>Harris v. Reston Hosp. Ctr., LLC</u>, 523 F. App'x 938, 946 (4th Cir. 2013) (affirming district court's decision to refuse to consider an additional legal theory introduced for the first time in opposing summary judgment)). Accordingly, Plaintiff's inclusion of a new defense in opposing summary judgment is improper.

Regardless, even on the merits, Plaintiff's naked licensing defense cannot defeat summary judgment. A naked license, as the name implies, requires a license between two parties. Plaintiff has not put forth sufficient facts showing the existence of any license between Defendants and PLM. At most, PLM told Maestre it would not pursue legal action against him for using the marks in North Carolina. And Maestre unequivocally testified that he was never given express permission from PLM. There are no facts showing any type of contractual relationship between Defendants and PLM whereby Defendants were granted the right to use the marks as a licensee of PLM. Accordingly, this defense fails.

Plaintiff also argued bad faith—because of Defendants' knowledge of PLM's rights—as a defense for the first time in opposing summary judgment. (Doc. No. 169 at 13–14). Like Plaintiff's naked licensing defense, Plaintiff's newly alleged bad faith defense is improper as Plaintiff never sought leave or requested permission to amend its pleadings. While Plaintiff did allege bad faith as part of a claim in the Complaint—because of Defendants' knowledge of Plaintiff's rights—the bad faith defense raised in Plaintiff's opposition is a new legal theory based on Defendants' knowledge of PLM's rights. Accordingly, Plaintiff's inclusion of a new bad faith defense in opposing summary judgment is improper.

Regardless, even on the merits, Plaintiff's bad faith defense does not defeat summary judgment. To show bad faith in trademarks, a party must show that the junior user "inten[ded] to promote confusion or exploit [the senior user's] good will or reputation." Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 388 (2d Cir. 2005). Here, PLM is not a party in the case, and Plaintiff has alleged no facts that PLM has used the marks to sell goods in North Carolina. As there are no facts showing that PLM used the marks in the geographic area where Defendants operate their business, there is no good will or reputation that Defendants can exploit. Moreover, there are no

23

facts showing that Defendants knew of any rights that PLM had in the marks in North Carolina. Accordingly, this defense fails.

<em>b.      Geographic Scope of Defendants' Rights</em>

The Lanham Act specifically provides for injunctive relief to prevent violations of trademark rights in Section 1125(a). 15 U.S.C. §1116(a).  The North Carolina Supreme Court stated that "an injunction lies to restrain the simulation and use by one corporation of the name of a prior corporation, which tends to create confusion and to enable the latter corporation to obtain, by reason of the similarity of names, the business of the prior one."  <u>Blackwell's Durham Tobacco Co. v. The Am. Tobacco Co.</u>, 145 N.C. 367, 374 (1907).  Moreover, "a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case."  <u>Scotts Co. v. United Indus. Corp.</u>, 315 F.3d 264, 273 (4th Cir. 2002); <u>see also</u> <u>Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.</u>, 799 F. Supp. 2d 558, 579-80 (M.D.N.C. 2011) (noting that this "commonly-applied presumption" has not been altered by the Supreme Court's holding in <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388 (2006)).

Defendants allege the relevant market is North Carolina and, in particular, at least three counties in and around the Charlotte area, including: Mecklenburg County (because Plaintiff operates stores in that county), Cabarrus County (because Defendants operate a store in Concord, NC, within Cabarrus County, and Plaintiff had a store there) and Union County (because the Sweet Union Flea Market, where Defendants also do business, is in Monroe).  (Doc. No. 168 at 19). Plaintiff has not argued against such a market, and the parties agree there is a likelihood of confusion.  This Court agrees the relevant market includes Mecklenburg County, Cabarrus County, and Union County as Plaintiff and/or Defendants have operated businesses in these counties using the marks at issue to sell paletas.  However, as these parties operate brick-and-mortar stores, and as neither party has submitted evidence showing a likelihood of confusion outside these counties,

24

this Court declines to extend injunctive relief throughout the entirety of North Carolina. Accordingly, Defendants' request for a permanent injunction against Plaintiff from using the "La Michoacan" and "La Michoacana Natural" word marks, the Indian Girl design mark, or any confusingly similar mark is **GRANTED** for Mecklenburg County, Cabarrus County, and Union County.

## III.   PLAINTIFF'S MOTION TO DISMISS ITS THIRD AND FIFTH CLAIMS

Plaintiff's motion to dismiss its third and fifth claims, which was filed after Defendants' summary judgment motion, is **DENIED as moot** in light of the grant of summary judgment in favor of Defendants on these claims. This Court does not address whether Plaintiff's motion to dismiss specific claims was appropriate under Rule 41(a)(2) or whether it should have been brought under Rule 15(a). Fed. R. Civ. P. 41(a)(2), 15(a).

## IV.   CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff, within 14 days of the date of this Order, inform the North Carolina Secretary of State that this Court has determined Plaintiff does not have priority of use of the trademarks that are the subject of North Carolina state trademark registration numbers T-22395;T-22396; T-22397; T-22398; T-22399; T-22400; T-22401; T-22402; T-22403, and to take the necessary action to withdraw or cancel each of these registrations.

**IT IS FURTHER ORDERED** that Plaintiff, within 30 days of the date of this Order, file a status report with this Court and to do so every 30 days until the registrations are cancelled.

**IT IS FURTHER ORDERED** that:

1.   Defendants' Motion for Summary Judgment, (Doc. No. 167), is **GRANTED;**

2.   Plaintiff's claims against Defendants are **DISMISSED;**

3.   Defendants' counterclaims against Plaintiff are **GRANTED;**

25

4.    Defendants' request for a permanent injunction against Plaintiff from using the "La Michoacana" and "La Michoacana Natural" word marks, the Indian Girl design mark, or any confusingly similar marks is **GRANTED** for the geographic area encompassing Mecklenburg County, Cabarrus County, and Union County;

5.    Plaintiff's Motion to Dismiss its Third and Fifth Claims, (Doc. No. 173), is **DENIED as moot;** and

6.    The Clerk is instructed to terminate these proceedings.

Signed: September 7, 2021

Robert J. Conrad, Jr.
United States District Judge